No. 19,368.

THE CHARLES WOLFF PACKING COMPANY, *Appellee*, v. THE TRAVELERS INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. EMPLOYER'S LIABILITY INSURANCE—*When Employee is Within Terms of Policy.* An employee, engaged in loading dirt to be used in filling up an excavation inside and around the foundation for a new building, and in filling up the grounds of a plant to protect it from flood, is within the terms of an employer's liability insurance policy which includes "the work of making ordinary repairs for the preservation of machinery or buildings and the renewal of existing mechanical equipment," and is not excluded by the terms of the policy, providing that "the employees covered by this policy do not make additions to, alterations in, construct or demolish buildings, structures or plant."

2. SAME—*When Employee Was Not Within Terms of Policy— Injuries Received While Off the Employer's Premises.* An employee is not within the terms of an employer's liability insurance policy, when he is injured while working in a city park situated across a street running between the park and the yards of a packing house, when the policy provides that "this agreement shall apply only to such injuries so sustained while within the factories, shops or yards," of such packing house, "or upon the premises or ways immediately adjoining."

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed March 6, 1915. Reversed.

*R. W. Blair, C. A. Magaw, T. M. Lillard,* all of To-peka, and *O. C. Mosman,* of Kansas City, Mo., for the appellant.

*Edwin D. McKeever,* of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action on an employer's liability insurance policy. The plaintiff recovered judgment. The defendant appeals.

The defendant issued to the plaintiff a policy of liability insurance, by the terms of which it agreed to indemnify the plaintiff against loss, by reason of liability imposed on the plaintiff by law, for damages on account of injuries to any of its employees while engaged in the business described as "packing house, including handling of cattle and slaughtering," and while engaged in the work of making ordinary repairs for the preservation of the machinery or buildings and the renewal of existing mechanical equipment, but excluding any injuries sustained in making additions to, alterations in, or the construction or demolition of any building, structure or plant, or by the installation of mechanical equipment in any building or part of building not previously occupied by the plaintiff, unless a permit to do such work was obtained from the insurance company.

For the purposes of this case, the material parts of the policy are as follows:

"V. This agreement shall apply to such injuries sustained by (*a*) any person or persons employed by the Assured whose entire compensation is included in the Declarations hereinafter contained and upon which the premium for this Policy is computed; . . .

"VI. This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations and shall include the work

of making ordinary repairs for the preservation of machinery or buildings and the renewal of existing mechanical equipment. Unless a permit describing the work to be undertaken, signed by an Officer of the Company, is hereto attached, this agreement shall not apply to such injuries so sustained if caused by making additions to, alterations in, or the construction or demolition of any building, structure or plant, or by the installation of mechanical equipment in any building or part of building not previously occupied by the Assured.

"VII. This agreement shall apply only to such injuries so sustained while within the Factories, Shops or Yards defined in said Declarations or upon the premises or ways immediately adjoining. Drivers and their helpers, salesmen, collectors and messengers whose entire compensation is included in the compensation upon which Premium for this policy is computed shall also be covered hereby wherever they may be elsewhere in the service of the Assured in connection with the business operations described, but not while engaged in installations or mechanical demonstrations. . . .

### DECLARATIONS.

"Item 5. The foregoing enumeration of employees includes all persons in the service of the Assured in connection with the operations herein described to whom compensation of any nature is paid or allowed, except the members of the Assured if a co-partnership, the President, Vice-President, Secretary or Treasurer of the Assured if a corporation, any drivers employed by the Assured who are enumerated in any concurrent Teams policy carried by the Assured with this Company or any person wholly engaged in clerical office duties. The foregoing estimates of wages and other compensation are offered for the purpose of computing the advance premium.

"Item 11. No operations of any nature not herein disclosed are conducted by the Assured or any one else upon the premises covered hereby. . . .

"Item 12. The employees to be covered by this Policy do not make additions to, alterations in, or construct or demolish buildings, structures, or plant."

The Wolff Packing Company occupies a large tract of ground at the foot of Quincy street in Topeka, Kan., extending from Monroe street on the east to Kansas avenue on the west, and from Crane street on the south to near the Kaw river on the north. The west line does not front entirely along Kansas avenue, but at the northwest corner of the tract, fifty feet does front on Kansas avenue. On the west side of the avenue, which is 130 feet wide, is the city park. Twenty-five feet within the park is the spot where Porter Harrison, an employee of the plaintiff, was injured.

On November 17, 1911, while this policy was in force, Harrison was required by his employer to go across the street from the packing plant, onto the premises of the city, west of Kansas avenue, to shovel dirt into a wagon, and while doing so was injured. The dirt was hauled by teamsters of the packing company onto its ground, which ground it had been for some years raising above the high-water mark set by the flood of 1903. Prior to the accident, the packing company had constructed a foundation for an ice house, and, in connection with the general grading up of the surface of the ground, part of the dirt was being thrown inside and around this foundation. The dirt was used partly to fill in around certain switch tracks, the position of which had been changed by the railroad company, and partly for the purpose of bringing the surface of the plaintiff's ground above high-water mark. This filling up by the company was done for the preservation of its buildings.

Porter Harrison was one of those employees whose entire compensation was included in the amount upon which the premium on the policy was calculated. The packing company paid him $1200 as damages for his injury.

A demurrer to plaintiff's evidence was overruled. The defendant did not introduce any evidence. Judgment was rendered for the plaintiff for $1200 and costs.

The defendant contends that there are two reasons why the plaintiff is not entitled to recover in this action: (1) Because the work in which Harrison was engaged when he received his injury was not such as contemplated in the schedule of operations, which was, "packing house, including handling cattle and slaughtering." (2) Because the injuries were not sustained within the factories, shops or yards of the appellee or upon the premises or ways immediately adjoining.

1. Was the work in which Porter Harrison was engaged included within the terms of the policy? The policy included "the work of making ordinary repairs for the preservation of machinery or buildings, and the renewal of existing mechanical equipment." It excluded work in "making additions to, alterations in, or the construction or demolition of any building, structure or plant, or . . . the installation of mechanical equipment in any building or part of building not previously occupied by the Assured." This policy should be construed most strongly against the defendant and in favor of the plaintiff. (*Insurance Co. v. Milling Co.,* 69 Kan. 114, 116, 76 Pac. 423; *Accident Ins. Co. v. Crandal,* 120 U. S. 527, 30 L. Ed. 740, 743; 1 Cooley's Briefs on the Law of Insurance, 633; *Loventhal v. Home Insurance Co.,* 112 Ala. 108, 20 South. 419, 57 Am. St. Rep. 17, 19, 33 L. R. A. 258, 260.)

Giving the policy a liberal construction, Porter Harrison was engaged in work for the preservation of the buildings, and was therefore within the terms of the policy, so far as the character of the work in which he was engaged is concerned.

2. The defendant contends that Porter Harrison, at the time of his injury, did not come within the terms of the policy, because his injury was not sustained while within the factories, shops, or yards defined in the application for the policy, nor upon the *premises or ways immediately adjoining.* Defendant claims that these operations were not included within the policy,

as shown by article VII of the policy, and item 12 of the declarations, or application for the policy.

Was the place where the injury occurred upon the premises or ways *immediately adjoining* the factories, shops, and yards of the plaintiff's packing house, within the meaning of the policy?  The term "immediately" implies that nothing intervenes.  The word "adjoining" ordinarily means joining to; contiguous; adjacent, as an adjacent room.  (Webster.)

The words "adjoining" and "adjacent" are often used synonymously, but not always.  In *City of Hutchinson v. Danley*, 88 Kan. 437, 129 Pac. 163, this court held that "The ordinary meaning of the word 'adjacent' is close, lying near to but not actually touching." (Syl. ¶ 1.)  In *The State, ex rel., v. Kansas City*, 50 Kan. 508, 514, 31 Pac. 1100, and in *Board of Education v. Jacobus*, 83 Kan. 778, 112 Pac. 612, this meaning was given to the word in order to carry into effect statutory provisions which otherwise must have failed.

In 1 C. J. 1198, it is said:

"*Adjoining.* . . . In its etymological sense the word means abutting; lying next to or in contact with; contiguous; in contact with; lying or being next to or in contact; meeting at some line or point of juncture; next to; touching or contiguous; as distinguished from lying near or adjacent.

"According to the more approved definitions, the word carries with it the idea of actual contact and touch; but this is not necessarily the meaning of the word in all connections.

"The word has been variously construed by the courts according to circumstances, as 'along,' 'fronting,' or in the sense of 'adjacent,' 'near,' or 'nearest or most accessible.'  Thus when the word is used in statutes relating to arson, burglary, change of venue, eminent domain, or local assessments, its meaning must be gathered from the context and the intention of the particular statute in which it is used.  The meaning of the word in any given instance must be determined by the intention of the parties or statute, and by the situation of the property sought to be included or excluded from the meaning of the term.

"The question as to what amount of separation will or will not deprive premises of the character of adjoining premises within the meaning of that term depends upon the circumstances of each particular case."

"Adjoining" seems to be a more restricted or confined word than "adjacent." If the word "adjoining" by itself had been used, there might be room for extending its meaning so as to include the park across the street. But when the word "immediately" is used, it shows a clear intention on the part of those writing the contract, that the contract should cover only those premises or ways that touch some part of the packing-house yards. It is true that the city park is public property, and that the street is public property, but there is a difference between the two. The city owns the park much the same as a private corporation owns land. The public owns the street for use as a public highway. They are separate premises or tracts of land, one devoted to one purpose and the other to another purpose. It is stretching the terms of the contract too far to say that the park immediately adjoins the yards of the plaintiff, because the park immediately adjoins the street, and the street immediately adjoins those yards. This is the main question in the case. If the policy can not be construed to cover Harrison when he was working in the city park, then the plaintiff must fail. We can not so construe it without doing violence to the language of the policy. That language is the most restricted general language that can be used. The judgment is reversed.