(635 P.2d 1271)

No. 52,731

JESSE SMITH, JR. and ARLENE SMITH, HARRY W. TOWNS and ALICE TOWNS, CARL KEMPER and CAROLINE KEMPER, ABE BERGEN and ELLA BERGEN, LEROY ROBINSON and MARGARET ROBINSON, ROBERT JOHN and MARY JOHN, IRWIN ALGRIM and MELUSINE ALGRIM, CECIL O'BRATE and CHARLES DREW, *Plaintiffs-Appellees*, v. CITY OF GARDEN CITY, KANSAS, a Municipal Corporation, *Defendant-Appellant.*

Opinion filed November 13, 1981.

*Thomas J. Burgardt,* of Calihan, Brown, Osborn & Burgardt, of Garden City, for the appellant.

*John W. Rintoul, Michael J. Friesen,* and *Michael K. Ramsey,* of Friesen & Rintoul, P.A., of Garden City, for the appellees.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

PRAGER, J.: This is an action for a declaratory judgment and an injunction to enjoin the city of Garden City from improving a certain street and levying assessments for the improvements. The facts in the case are not in dispute.

On July 2, 1980, the governing body of the city of Garden City adopted a resolution in accordance with K.S.A. 12-6a04, setting a hearing on the advisability of creating an improvement district along Campus Drive in Garden City for the purpose of improving that roadway. The hearing on advisability was held on July 23, 1980, and the governing body, finding such an improvement advisable, adopted a resolution authorizing the improvements. The resolution made provision for the assessment of the improvements against those individuals owning property within the improvement district. Thereafter, the city published the resolution in the *Garden City Telegram*. Within the twenty-day period established by K.S.A. 12-6a06 for the filing of protests, plaintiffs, as resident property owners, filed with the city clerk a petition protesting the formation of the proposed improvement district

and the assessment of the costs of such improvements against them.

The city then held a hearing for the purpose of determining the validity of plaintiffs' protest petition. At that hearing, the city determined that it was unnecessary to address the issue of the petition's validity based upon its interpretation of K.S.A. 12-6a06, which provides as follows:

12-6a06. "The governing body may, by a majority vote of the entire members-elect thereof, at any time within six (6) months after the final adjournment of the hearing on the advisability of making the improvements, adopt a resolution authorizing the improvement in accordance with the finding of the improvement, as provided in K.S.A. 12-6a04, which shall be effective upon publication once in the newspaper: *Provided,* The improvement shall not be commenced if, within twenty (20) days after publication of the resolution ordering the improvement, written protests signed by both fifty-one percent (51%) or more of the resident owners of record of property within the improvement district and the owners of record of more than half of the total area of such district are filed with the city clerk: *Provided, however, Whenever adjoining parallel streets have been improved, and the proceedings are to improve the intervening connecting street to the same extent as the streets to be connected, or when two portions of any street have been improved and an intervening portion not exceeding two blocks has not been improved, and the proceedings are to improve such intervening portion to the same extent as the improved portions, or when the proceedings are to improve sanitary and storm water sewers, no protest shall be accepted by the city clerk and such improvements may be made regardless of protests.* The genuineness of the signature and addresses of all signers of each protest shall be verified by some signer of such protest. The governing body shall be judge of the sufficiency of any protest and its decision shall be final and conclusive: *Provided,* Names may be withdrawn from any protests by the signers thereof at any time before the governing body shall convene its meeting to determine the sufficiency thereof." (Emphasis supplied.)

The parties have stipulated that the city had no evidence to controvert the fact that the named plaintiffs, who signed the protest petition, are in excess of 51% of the resident owners and the owners of 51% of the area subject to improvement. Ignoring the petition, the city determined that it would proceed with the street improvements. Plaintiffs then brought this action seeking declaratory and injunctive relief. Plaintiffs moved for judgment on the pleadings. The trial court sustained plaintiffs' motion and granted an injunction prohibiting the city from proceeding with the improvements on Campus Drive. The city appealed.

The map of Garden City discloses the following undisputed facts: Kansas Avenue is a four-lane street running east and west in Garden City. Mary Street lies about one mile north of Kansas

Avenue and also runs from east to west. The two streets are separated by a large portion of the residential area of the city. There are a number of intermediate residential streets running parallel to Kansas Avenue and Mary Street in the area lying between those two streets. Several of these streets intersect Campus Drive which runs north and south on the west edge of the city and intersects Kansas Avenue and Mary Street.

The parties agree that Kansas Avenue and Mary Street are parallel streets. The issue to be determined is whether those streets are "adjoining" parallel streets within the meaning of K.S.A. 12-6a06 so as to authorize the city to improve Campus Drive, notwithstanding the protest petition filed by the plaintiffs as resident property owners. The district court held that they are not. We agree.

The term "adjoining" is defined in Webster's Third New International Dictionary 27 (1967) as "touching or bounding at some point or on some line: near in space." It lists "adjacent" as being a synonym. In *Packing Co. v. Insurance Co.,* 94 Kan. 630, 635, 146 Pac. 1175 (1915), the court quoting Corpus Juris, defined "adjoining" as follows:

"*'Adjoining.* . . . In its etymological sense the word means abutting; lying next to or in contact with; contiguous; in contact with; lying or being next to or in contact; meeting at some line or point of juncture; next to; touching or contiguous, as distinguished from lying near or adjacent.

" 'According to the more approved definitions, the word carries with it the idea of actual contact and touch; but this is not necessarily the meaning of the word in all connections.

" 'The word has been variously construed by the courts according to circumstances, as "along," "fronting," or in the sense of "adjacent," "near," or "nearest or most accessible." Thus when the word is used in statutes relating to arson, burglary, change of venue, eminent domain, or local assessments, its meaning must be gathered from the context and the intention of the particular statute in which it is used. The meaning of the word in any given instance must be determined by the intention of the parties or statute, and by the situation of the property sought to be included or excluded from the meaning of the term.' "

In that case, the question was whether a park across the street from a certain property was "immediately adjoining" that property. The court held that if the word "adjoining" had been used alone, the park could be said to be "adjoining" the property, but that the word "immediately" prevented that interpretation to those facts.

Again in *State, ex rel., v. Bunton,* 141 Kan. 103, 105, 40 P.2d 326

(1935), the court said that "[a]djoin means to be contiguous to; to be in contact with; to abut upon; and adjoining means contiguous, adjacent." In Words and Phrases, Vol. 2, numerous cases are found defining "adjoining" as being contiguous or touching, or near or next to.

From these cases, we have concluded that, for two things to be "adjoining", they must be either actually touching or next to each other. Since, by definition, parallel streets cannot touch, it follows that they must be next to each other to be "adjoining." It is clear from the stipulated facts that Kansas Avenue and Mary Street are not "adjoining" streets. They are at least a mile apart with numerous parallel streets in between. We believe that when the legislature used the word "adjoining" it meant to use the word in its usual meaning. Accordingly, the term "adjoining parallel streets" cannot be construed to apply to two streets which are in fact parallel but which have intermediate parallel streets in the area between them.

We are impressed by the plaintiffs' argument that to hold that the two streets in question did fall within "adjoining parallel streets" would lead to an absurdity. K.S.A. 12-6a06 clearly provides a protest procedure for the improvement of streets. If the city's argument were correct, then the protest procedure could easily be nullified in most instances. We do not believe that this was the intent of the legislature in enacting K.S.A. 12-6a06. We, therefore, affirm the district court in holding that portions of Campus Drive could not be improved in view of the protest petition.

The district court, as an additional reason for its decision, found that Campus Drive was an improved road, which precluded the city from relying on the second exclusionary provision in K.S.A. 12-6a06 which permits a city to ignore a protest petition "when two portions of any street have been improved and an intervening portion not exceeding two blocks has not been improved, and the proceedings are to improve such intervening portion to the same extent as the improved portions." That issue was neither relied on by the city nor briefed by the parties in district court. We find it unnecessary to determine it here. Suffice it to say, the second exception was not applicable, since the proposed improvement district was intended to improve a portion

of Campus Drive nearly one-half mile in length and far in excess of the two-block limitation provided in the statute.

The judgment of the district court is affirmed.