THE SOUTHERN KANSAS RAILWAY COMPANY *et al.* v. SAMUEL J. SHARPLESS *et al.*

No. 11,652. (62 Pac. 662.)

CITIES AND CITY OFFICERS—*Vacation of Street—Reversion.* A street of a city was vacated and it reverted to the owners of abutting property. An owner of eleven lots adjoining the vacated street mortgaged the same by definitely describing the lots, but no mention was made of the adjoining strip acquired by reversion. *Held,* that the mortgage did not create a lien on the strip.

Error from Sumner district court; W. T. McBRIDE, judge. Opinion filed November 10, 1900. Modified and reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiffs in error.

*C. E. Elliott, W. W. Schwinn,* and *C. D. Burnette,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was a foreclosure proceeding, brought by Samuel J. Sharpless against John T. and Florence M. Showalter. Three railroad companies were also made parties defendant. Sharpless asked for judgment on a promissory note for $3000, executed by the Showalters, and to foreclose a mortgage given by them on the west half of block 2 in Myers's addition to the city of Wellington. In the trial court, there was no contention as to the debt nor as to the lien of the mortgage on the territory particularly described in the mortgage, but it was claimed that the mortgage covered and included a strip of land occupied by the railroad company north of that described in the mortgage, and the trial court so held.

Briefly stated, the facts out of which the contention

arose are as follows : On and prior to April 19, 1887, Florence M. Showalter owned, and with her husband resided upon, the half block above described, which consisted of eleven lots. Immediately north of the lots was First street, which was vacated by the city council on April 19, 1887, and a right of way was granted to the railroad company for its tracks along the street leading to the station-house near by. On May 20, 1887, the mortgage in question was executed, and within a month thereafter the railroad company entered upon the strip of land and built railroad-tracks. On January 6, 1888, Mrs. Showalter brought an action against the railroad companies to recover for the appropriation of the strip of land north of her lots, upon the theory that upon the vacation of the street one-half of the street so vacated reverted to her as an abutting owner, and she was awarded judgment against the companies for the sum of $4370. Upon proceedings in error the judgment was modified, and reduced to $3100. ( *Showalter v. S. K. Rly. Co.*, 49 Kan. 421, 32 Pac. 42 ; *Railway Co. v. Showalter*, 57 id. 681, 47 Pac. 831.) Soon after the rendition of the judgment Mrs. Showalter assigned portions of it to a number of her creditors to secure the payment of certain debts which she was owing, which assignments included all the money due on the judgment except $21.71, and the assignees were made parties to this proceeding. After the commencement of this action a garnishment proceeding was brought against the railroad companies, by which the plaintiffs sought to subject any unappropriated portion of the judgment to the payment of their claims. The court found that there was due on the note and mortgage the sum of $2917.35 ; that the mortgage was a first lien on the eleven lots above described, and also the strip of land

which formerly constituted the street and on which the lots abut; that the persons to whom the judgment had been assigned were entitled to the portions assigned, and that the balance of the amount of the judgment, $21.71, be paid to the plaintiff.

While Sharpless, the mortgagee, criticizes the judgment of the district court and asks for relief not given in the decree, he is not in a position to obtain a modification of the judgment. He has not filed a cross-petition in error, and therefore, as to him, the judgment is a finality.

The railroad companies complain of that portion of the decree declaring that the mortgage is a lien on the strip of land north of the mortgaged lots and on which their tracks are located. They alleged that they were ready and willing to pay the judgment awarded the Showalters against them for the permanent appropriation of the land to whomsoever may be entitled to it, whenever they can do so and be fully discharged and protected; but they were unwilling to pay for the land appropriated a second time.

The first and controlling question in the case is, Did the mortgage cover and include the strip of land which formerly constituted a part of the street and is occupied by the railroad company? By the vacation of the street, one-half of it reverted to and became the property of the abutting owners. The reversion practically added another lot to the holding of the Showalters. Can it be fairly said that the mortgage which definitely described the eleven lots was intended to encumber the additional strip or lot which the mortgagor had acquired? The owners were free to mortgage as much or as little of their property as they deemed best; and did they not in specific terms limit the encumbrance to the eleven lots south of the va-

cated street? Is the mortgage to be extended by interpretation or operation of law over property other than that specifically described in the instrument? The limits of the lots were fixed by the plat of the city, of which the mortgagee was required to take notice; and the strip of land in question lay outside these limits. Looking at the plat, the exterior limits of the eleven lots were as definitely fixed and as well known to the parties as though they had been described by metes and bounds; and if they had been so described no one would claim that the description included additional territory, whether the mortgagors acquired it by reversion, purchase, or otherwise. The strip was acquired by the Showalters after the lot limits were established by the plat, and since they used the description and limits of the plat in describing the mortgaged property, why should we assume that they intended to mortgage property acquired after the limits were established and lying outside of those limits? No language is used in the mortgage indicating a purpose to include ground acquired by reversion, and while it adjoined that described in the mortgage, the description used did not, it seems to us, indicate an intent to encumber it. The Showalters were at liberty to convey this strip apart from the lots to which it was annexed; and, if they had expressly mortgaged it to another, would not the latter hold a lien as against the mortgage of Sharpless, which covered a tract the boundaries of which were as clearly fixed as if described by metes and bounds?

We are referred to *A. T. & S. F. Rld. Co. v. Patch*, 28 Kan. 470, as authority for extending the mortgage over the adjoining strip, but that case applies to a transfer of title, and we need not at this time determine whether the language there employed was fully

justified or enter upon a reexamination of the questions there decided. It related alone to a conveyance of title, while, as is well known, a mortgage neither gives possession nor vests title. (*Chick and others v. Willetts*, 2 Kan. 384; *Waterson v. Devoe*, 18 id. 223.) It is a mere security or lien, and we are unwilling to extend the doctrine of the Patch case so as to apply to a mortgage and hold it to encumber property outside that definitely described in the instrument itself.

We conclude that error was committed in holding that the strip was subject to the lien of the mortgage, and, therefore, that the judgment of the district court must be modified by excluding it from the operation of the decree of foreclosure or from sale for the mortgage debt.