No. 28,991.

John M. Rothwell et al., *Appellants*, v. Ira Veail et al., *Appellees*.

(284 Pac. 359.)

Opinion filed February 8, 1930.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellants.

*E. J. Taggart, John Bradley,* both of Wellington, *H. W. Hart, Glenn Porter, Enos Hook,* all of Wichita, *Albert Faulconer, Kirk W. Dale* and *C. L. Swarts,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one to quiet title to real estate. The judgment was for defendants, and plaintiffs appeal.

The plat of the town of Oxford, dividing the townsite into lots, blocks, streets and alleys, was filed in February, 1872. One of the streets shown on the plat and dedicated to public use was Cedar street. In October, 1879, the city of Oxford was incorporated according to the plat. Previous to 1879 John M. Rothwell became owner of the lots abutting on the south side of Cedar street. In March, 1879, the legislature vacated Cedar street and provided that title vested in the adjacent property owners. In June, 1879, Rothwell conveyed his lots, described according to the plat, to L. K. Scroggin by warranty deed. In 1885 a correction quitclaim deed was made. In 1881 Rothwell returned to Illinois, near Mt. Pulaski, and resided there until his death in 1909. Scroggin lived at Mt.

Pulaski from 1880 until his death in 1916. Rothwell's wife was Scroggin's daughter Angeline. She died in 1921. John M. Rothwell, Thomas L. Rothwell and Murtie Gasaway are the children of John M. and Angeline Rothwell. Scroggin left a large estate, which was voluntarily partitioned by exchange of deeds among his heirs. In 1921 the Rothwells signed partition deeds for a cash consideration of $2,500 paid to each one. Recitals of the deeds appear in the opinion in the case of *Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, at page 368, 273 Pac. 661.

In 1927 it was discovered that a pool of oil of enormous value underlies the city of Oxford. Afterwards the present action was commenced by the Rothwell heirs against the Scroggin heirs. The land involved is a strip 20 feet wide and 1,125 feet long, lying next to and south of the center line of Cedar street in the town of Oxford. (See map, 127 Kan., p. 366.)

The Rothwells contended the deed of their ancestor to Scroggin was a mortgage. The court made the following findings:

"6. The evidence does not convince the court that the said warranty deed and quitclaim deed were given or received or by either party intended to be a mortgage, or to be other than conveyances of the title purported to be conveyed by the said instruments.

"7. More than forty-nine years have elapsed since the transaction in issue occurred. The principals to the original transaction and such of their contemporaries as might be able to testify in reference thereto have died many years since. Oral testimony and documentary evidence have been lost and obscured, and the memories of those familiar with the facts have been weakened by the lapse of time. The land in controversy has become valuable for its mineral deposit, and has greatly changed in value since the dates of the instruments of conveyance."

The Rothwells want this court to declare the district court ought to have been convinced. This court approves the action of the district court, because there was no substantial evidence that the deed was given and accepted as a mortgage. Besides that, plaintiff's claim was insufferably stale, the action was plainly prompted by the common barrator, oil, and maintenance of the action was barred by laches.

Plaintiffs contend title to the south half of Cedar street did not pass to Scroggin by Rothwell's deed of the abutting land, Rothwell and his successors in interest have never conveyed, and plaintiffs own the land. The contention is contrary to the decision in the case of *A. T. & S. F. Rld. Co. v. Patch,* 28 Kan. 470 (1882).

In the Patch case a street in a city of the first class was vacated pursuant to a statute quoted in the opinion as follows:

"Whenever any street, avenue, alley or lane is vacated, the same shall revert to the owners of real estate thereto adjacent on each side, in proportion to the frontage of such real estate: . . . *Provided,* That when in the opinion of the council of such city it is necessary to reopen such street, avenue, alley or lane, they may order the same opened, without expense to the city." (p. 473.)

Because of the provision for reopening without expense, the court held the reverter was not an absolute cession; but the court held the portion of the vacated street in front of a lot becomes in the nature of an accretion to it, and any conveyance of the lot takes with it the attached portion of the vacated street.

It was not necessary to determine in the Patch case whether the reverter was to the original owner who filed the plat, or to abutting lot owners; but in the case of *City of Belleville v. Hallowell,* 41 Kan. 192, 21 Pac. 105, the court said:

"By operation of law, the land constituting the alley reverts to the owners of lots on either side, proportioned to the frontage of such lots on the vacated alley." (p. 195.)

This statement was accepted as correct in the case of *Challiss v. Depot and Rld. Co.,* 45 Kan. 398, 402, 25 Pac. 894, and was and ever since has been a correct statement of the law.

In seeking for a word to describe extension of the lot owners' interest to include the vacated street, the court in the Challiss case used the term "appurtenant." The syllabus reads:

"Where a portion of a street in a city of the first class is vacated pursuant to the provisions of ¶ 582 of General Statutes of 1889, and a lot abutting thereon condemned, and the perpetual use thereof acquired by a union depot and railroad company, for the maintenance of a union depot, the portion of the vacated street situated in front of the lot so condemned becomes, as it were, an accretion or appurtenant of the lot, and passes with the same to the company. (*A. T. & S. F. Rld. Co. v. Patch,* 28 Kan. 470.)"

In the case of *Haseltine v. Nuss,* 97 Kan. 228, 155 Pac. 55, it was explained that extension of a lot owner's interest to include a vacated street is not an accretion in any riparian sense, and plaintiffs say, properly enough, the fee of the county in the street before vacation could not become appurtenant to the fee of the lot owners, because land owned in fee simple cannot be appurtenant to land owned in fee simple. This, however, is merely to play with words. Whatever the correct expression may be, the Patch decision established

the principle that when a street is vacated the interest of an abutting lot owner is extended to include the vacated street in front of his lot, and will pass by conveyance of the lot.

Plaintiffs say the Patch decision was constrained by the fact that the reverter statute there considered (and reverter is not a good word) provided for subsequent reopening of the street without expense. That had nothing to do with what became of the street after vacation and before reopening, or with whether the lot owner's interest until reopening would pass by his deed.

Plaintiffs find differences in vacation statutes, and say there should be differences in consequences of vacation. That contention was made in the case of *Rowe v. Bowen,* 113 Kan. 641, 215 Pac. 1002, and was rejected as unsound, in the opinion. The syllabus of the Rowe-Bowen case reads as follows:

"Upon the vacation of a street, in a city of the second class, the vacated land reverts to the owners of the adjoining lots in proportion to the frontage of the lots thereon and becomes a part of such lots and passes under a conveyance in which the lots are described as originally platted."

The nature of vacation statutes generally was considered in the case of *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913:

"The common law on the subject under consideration is in force in this state, except as modified by statute. (*Tousley v. Galena M. & S. Co.,* 24 Kan. 328.) The only statutes which need to be noticed are those that place the fee of the city streets· in the county. The subject of who owns the fee of a highway becomes important when the highway is vacated. At common law, when the public easement terminated the owner of the fee became entitled to full enjoyment. Frequently it was said the highway 'reverted' to the fee owner. What occurred was, the burden in favor of the public was lifted. Following the analogy of the common law, the statutes annex the fee of a vacated street to the fees of the owners on each side, as if they and not the county had owned the street, by declaring that the fee reverts to them." (p. 205.)

In this instance Oxford was not incorporated when the vacation statute of 1879 was enacted, or when the Rothwell-Scroggin deed was made, and if the statute had not so provided, title to the vacated street would have vested in the abutting property owners under the common law.

There is one false note in the Kansas decisions on the subject under consideration, the decision in the case of *Railway Co. v. Sharpless,* 62 Kan. 841, 62 Pac. 662. The syllabus reads:

"A street of a city was vacated and it reverted to the owners of abutting

property. An owner of eleven lots adjoining the vacated street mortgaged the same by definitely describing the lots, but no mention was made of the adjoining strip acquired by reversion. *Held,* That the mortgage did not create a lien on the strip."

In the opinion in the case of *Rowe v. Bowen,* 113 Kan. 641, 215 Pac. 1022, the Sharpless decision was dealt with as follows:

"Whether or not that decision was rightly made under the circumstances of the case, it was not the purpose of the court to modify the rule previously announced. On the contrary, it is said that the rule applied to conveyances of title such as was made in this instance. That there was no intended departure from the construction previously placed upon the statute is evidenced by the later decision in *Haseltine v. Nuss,* 97 Kan. 228, 155 Pac. 55, which was made in 1916." (p. 643.)

That put the Sharpless decision in a class by itself, but there is no good reason why a description which if contained in a deed would carry title, would not if contained in a mortgage carry a lien.

Without pursuing the subject further, the court approves the following conclusions of law stated by the district court:

"1. That the warranty deed and quitclaim deed by John M. Rothwell and wife to Leonard K. Scroggin conveyed all of the interest that Rothwell had in the described premises.

"2. That the description of the premises by lot and block conveyed to the grantee the interest of the grantors in the adjacent tracts, formerly a part of Cedar street."

The judgment of the district court is affirmed.