No. 34,241

The Federal Farm Mortgage Corporation, *Appellee*, v. Jennie B. Smith, *Appellant*.

(89 P. 2d 838)

Opinion filed May 6, 1939.

*T. M. Stratton,* of Osage City, for the appellant.

*A. K. Stavely,* of Lyndon, *W. E. Pepperell, Conrad L. Ball, John P. Flinn* and *Edward H. Jamison,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This appeal presents a somewhat novel phase of the not unfamiliar question: What becomes of a strip of land taken from a farm by condemnation for a railway right of way when the right of way is abandoned?

Some half century ago a strip of land half a mile long and 100 feet wide, along the west side of the southwest quarter of section 28, township 18 south, range 17, in Osage county, was condemned for a railway right of way. The dominant estate thus created was used by the Missouri Pacific Railway Company until a few years ago, when the railway ceased operations in that locality and the right of way was abandoned.

On July 1, 1934, while the railway was still in operation, Jerry Smith and Jennie B. Smith, the then owners of the property concerned, executed a mortgage to plaintiff as security for a loan of $3,600. The mortgaged premises were described thus:

"The southwest quarter (SW ¼) less railroad right of way, of section twenty-eight (28), township eighteen (18) south, range seventeen (17) east of the

sixth (6) principal meridian; containing in all 154 acres, more or less, according to the U. S. government survey thereof.

"Together with all privileges, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, *including* all water, irrigation and drainage rights of every kind and description, however evidenced or manifested, and *all rights of way,* apparatus and fixtures belonging to or used in connection therewith, whether owned by the mortgagor at the date of this mortgage, or thereafter acquired." [Italics ours.]

Eventually, through default of the obligors, foreclosure proceedings were instituted by the plaintiff mortgagee, whose petition contained the usual allegations, and also the following:

"That since the execution of the note and mortgage herein alleged the Missouri Pacific Railroad Company has abandoned its right of way over the west portion of the property described in said plaintiff's mortgage; that by reason thereof title to the railroad right of way thus abandoned has become vested in the heirs of Jerry Smith, deceased.

"That by reason thereof this plaintiff is entitled to judgment foreclosing the lien of its mortgage as to the southwest quarter (SW¼) of section twenty-eight (28), township eighteen (18) south, range seventeen (17) east, including the right of way formerly occupied by said railroad company."

Service was had by publication on some of the defendants, and other defendants entered their voluntary appearances. None of defendants filed pleadings, and judgment as prayed for was rendered in plaintiff's behalf for $4,343.59. It was a personal judgment against Jennie B. Smith, one of the makers of the note and mortgage sued on. Her husband, Jerry Smith, had died in the interim. The mortgage was ordered foreclosed, and the trial court made a special finding as follows:

"The court further finds that since the execution of the note and mortgage above described the Missouri Pacific Railroad Company has abandoned its right of way over the west portion of the property described in said plaintiff's mortgage; and that by reason thereof said plaintiff is entitled to judgment foreclosing the lien of its mortgage as to the entire southwest quarter (SW¼) of section twenty-eight (28), township eighteen (18) south, range seventeen (17) east, including the abandoned railroad right of way."

This judgment was rendered on July 28, 1938. On September 30, 1938, which was within the same term of court (G. S. 1935, 20-1032), certain defendants, including Jennie B. Smith, filed a motion to modify the judgment rendered on July 28, 1938, on the following ground:

"That said judgment rendered on the 28th day of July, 1938, was void; that said real-estate mortgage foreclosed should only cover the southwest quarter (SW¼) less railroad right of way of section twenty-eight (28), township

eighteen (18) south, range seventeen (17) east, and should not include the abandoned railroad right of way; and that the said answering defendants are the owners of said abandoned right of way as their respective interest is heretofore alleged; and that the same is not subject to said mortgage; that said judgment was secured by fraud practiced by the plaintiff in obtaining judgment or order in that the said judgment or order was for foreclosure of a mortgage upon more real estate than was described in said mortgage and than what the plaintiff was entitled to judgment thereon."

Other named defendants whose interest in the action was not shown filed a similar motion on October 14, 1938 (still within the same term), of the same tenor as that of Jennie B. Smith, and seeking the same relief. While this motion was pending, no steps were taken to stay the foreclosure sale; and on October 3, 1938, the sheriff sold the property on plaintiff's bid for the full amount of the judgment. The sale was confirmed on November 7, 1938, and deed ordered in eighteen months unless redemption were effected in the interim as by law permitted. At the same time defendant's motions were considered and denied. On November 9, 1938, that term expired and a succeeding term of court began.

On November 10, 1938, appellant served her notice of appeal, specifying error in the judgment rendered on July 28, 1938, and on the overruling of her motion to modify that judgment on November 7, 1938.

Counsel for appellee raise some technical objections to the consideration of this appeal, but we are disposed to ignore them for the time being while we deal with the question of law relating to this strip of ground, 100 feet wide and half a mile long, which constitutes the western margin of the Smith land described above and which was foreclosed and sold in the case now under review.

It is elementary that land condemned for a right of way for a railroad or other public purpose continues to be the property of its fee-title owner. Its condemnation and use for the public purpose subjects it to a servitude which may and commonly does deprive the owner of the fee of all beneficial use of it. But if or when the purposes which authorized the condemnation have been terminated the burden of servitude is lifted from the land and the owner of the basic fee returns to full dominion. (K. C. Rly. Co. v. Allen, 22 Kan. 285; Harvey v. Railroad Co., 111 Kan. 371, 207 Pac. 761; Bowers v. Atchison, T. & S. F. Rly. Co., 119 Kan. 202, 237 Pac. 913; Rothwell v. Veail, 129 Kan. 679, 284 Pac. 359; Midland Valley R.

*Co. v. Sutter,* 28 F. 2d 163. See, also, exhaustive synopsis of this court's decisions on eminent domain, Judicial Council Bulletin, July, 1933, pp. 36 *et seq.*) In *Harvey v. Railroad Co.,* supra, where the use of certain land condemned for railway purposes in the city of Osborne, but not actually used for such purposes, was drawn in question, this court said:

"One whose property is subjected to condemnation for railway or other public uses is none the less the owner of the fee and holder of the ultimate title. He has what the law calls the servient estate. The party for whose use the condemnation was made has what is called the dominant estate. . . . If the railway at Osborne should be abandoned or relocated elsewhere than on plaintiff's property the dominant estate would terminate and the defendant's right acquired by condemnation would terminate and revert to the plaintiff." (pp. 372, 373.)

We have held that when land is devoted to railway purposes it is immaterial whether the railway company acquired it by virtue of an easement, by right-of-way deed or other conveyance, or by condemnation. If or when it ceases to be used for railway purposes, or if such use never materialized, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. (*Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208; *Barker v. Lashbrook,* 128 Kan. 595, 279 Pac. 12; *Danielson v. Woestemeyer,* 131 Kan. 796, 293 Pac. 507.)

Is there a logical basis for holding that the present case should not be governed by the settled rule of law just stated—because of the fact that the adjacent freehold from which this right-of-way strip of land was taken has been subjected to a foreclosure sale and that the instrument or conveyance is to be executed pursuant thereto by the sheriff and not by the usual form of deed which conveys title from owner to purchaser? We recognize the appellant's talking point—that the language of the mortgage only mentioned 154 acres more or less of the Jerry and Jennie Smith quarter section, and that it was the described quarter section *less* the railroad right of way, not *subject* to the railroad right of way, as a more careful draftsman of the mortgage might have worded it. Probably the parties to the mortgage gave this nice point no concern one way or another; yet there is some language in the description of the mortgaged property which concludes by the recital that all rights of way belonging to or connected with the property are to be included in the mortgage. Such language is susceptible of an interpretation that this railway

right of way—the only right of way of which the record gives any hint—was literally included in the mortgage.

But we pass that point to meet and deal with the fundamental one projected by this lawsuit, which is the question of public policy. The courts are generally agreed that when the long, narrow strips of land taken from the adjacent freehold for a highway, railroad right of way, or for other public purpose, are no longer used for such purpose, the full dominion over them returns to the holder of the underlying fee. The public policy concerned in the legal aspects of this matter was well stated by Judge Taft in *Paine v. Consumers' Forwarding & Storage Co.*, 71 Fed. 626, thus:

"The evils resulting from the retention in remote dedicators· of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases." (p. 632.)

This court has quoted this doctrine approvingly in *Barker v. Lashbrook*, 128 Kan. 595, 599, 279 Pac. 12. Later federal cases which reiterate the same rule are *Midland Valley R. Co. v. Sutter*, 28 F. 2d 163, and the related case of *Roxana Petroleum Corporation v. Corn*, 28 F. 2d 168; *Shell Petroleum Corporation v. Hollow*, 70 F. 2d 811; *Shell Petroleum Corporation v. Ward*, 100 F. 2d 778. See, also, 1 Dembitz on Land Titles, §§ 11, 74.

In the case of *Railway Co. v. Sharpless*, 62 Kan. 841, 62 Pac. 662, it was held that a mortgage on town lots did not by mere operation of statute become a lien on a vacated street adjacent to those lots. The soundness of that decision has been questioned twice by later decisions of this court (*Rowe v. Bowen*, 113 Kan. 641, 215 Pac. 1022, and *Rothwell v. Veail*, 129 Kan. 679, 284 Pac. 359). Moreover, the title to the fee of a street is in the county for the benefit of the public, and when the street is vacated the legislature can dispose of it according to its wisdom. The ultimate title to land subjected to railway purposes does not cease to be in the owner of the adjacent freehold from which it was derived, and the termination of its use for railway purposes has no effect upon the fee title. It merely relieves the underlying fee of the dominant estate which had been held by the railway company so long as it was used for railway purposes.

In this view it is immaterial whether the titles of successive holders of the adjacent freehold from which the moiety of land used for a

railway right of way was taken, and to which it returns when that public purpose has been subserved and terminated, hold by an ordinary conveyance from such prior title holders or by an independent title originating in a sheriff's deed executed pursuant to an order of court after confirmation of a sale in foreclosure of a mortgage.

There is no error in the record and the judgment is affirmed.