No. 35,890

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MARION, *Appellant*, v. (MARY E. MILLER et al., *Defendants*) C. M. CLARK, *Appellee.*

(138 P. 2d 449)

Opinion filed June 12, 1943.

*Roscoe King,* county attorney, was on the briefs for the appellant.

*D. M. Ward,* of Peabody, was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by the board of county commissioners of Marion county, to foreclose the county's lien for unpaid taxes, and from a judgment in favor of the defendant C. M. Clark, the county appeals.

In a preliminary way it may be said there was no dispute about the regularity of the proceedings, nor about the amount of taxes involved. The sole question was the sufficiency of the description of the real estate on which the tax lien was claimed.

From a plat offered and received in evidence, it appears that in the city of Peabody, as originally platted, Sycamore street north, which runs north and south, was one hundred feet wide. On the west side of Sycamore street north and just north of Second street, lay lot 57, and to the north, seriatim, were lots 59, 61 and 63.

The following facts are taken from the findings of the trial court:

1. Each of the above lots was platted 150 feet east and west and 25 feet north and south.

2. In 1879 the city by ordinance vacated 10 feet on each side of Sycamore street.

3. In 1921 defendant Clark received a conveyance by warranty deed from the owner of lots 57, 59, 61 and 63 on Sycamore street north in the city of Peabody, Marion county, Kansas, excepting the south 90 feet of the west 50 feet of said lots.

4. The county clerk instead of entering on the transfer record the description as in the above deed, entered the description as "the east 100 feet of lots 57, 59, 61, and all of lot 63 excepting the west 50 feet of the south 15 feet on Sycamore street," etc.

5. That the property was carried on the tax rolls under the description in No. 4 and the proceedings thereafter were regular insofar as that description is concerned.

6. That the property as described in the deed to Clark is one tract of land and at no time has said property been assessed as such tract.

"7. The total taxes, penalties and interest for the years 1936 to 1942, inclusive, shown on the tax roll in the county treasurer's office against the property as described thereon is $722.54, but there is no showing on the tax rolls of any of the tax proceedings for the years

1936 to 1942, inclusive, of taxes, penalties or interest on the tract of land as conveyed to C. M. Clark."

As a matter of law the trial court concluded that the taxes and assessments of 1936 to 1942 inclusive were void as against the tract of land as conveyed to Clark at finding No. 3, and that judgment should be rendered in his favor, and it was so adjudged.

The plaintiff's motions for additional findings, to set aside findings, and for a new trial were denied, and it appealed not only from the judgment in favor of Clark, but from the rulings on the motions last above mentioned.

In its abstract of the record, the appellant presents only one specification of error, which reads:

"Upon the findings of fact, and the record as a whole, the judgment of the lower court is contrary to law."

Appellee objects to a consideration of the appeal and contends it should be dismissed; that the effect of the specification of error is only that the judgment is contrary to law; that the overruling of the motion for a new trial is not specified as error and for that reason no claimed errors are before this court for consideration. In general support of this contention, our attention is directed to many of our decisions, some of which will be referred to later. It is first noted, however, that while the appellant did appeal not only from the judgment but also from the rulings on its motions following judgment, on presentation of its appeal it has elected to stand on one proposition—that upon the findings of fact made, the judgment is contrary to law. In this case no question of time is involved. The appeal was taken within two months from the date of the judgment. Appellant is not compelled to specify error on every ruling, decision and judgment included in its notice of appeal. If it is now willing to stand on the findings of fact made by the trial court, the subsequent rulings become immaterial. In such situation we are not concerned with whether the evidence supported the findings of fact or warranted other findings, or with rulings on evidence, and such other matters as would ordinarily have to be presented in a motion for a new trial. The sole question must be and is whether the findings of fact support the judgment rendered. Was the specification of error sufficient for that purpose? In *Lumber Co. v. Smith*, 84 Kan. 190, 114 Pac. 372, it was held that a specification that the court erred in rendering the judgment which it rendered, merely says the judgment is wrong and does not specify

any error. That rule was applied in later cases, among them being *Brewer v. Harris,* 147 Kan. 197, 75 P. 2d 287; *Heniff v. Clausen,* 154 Kan. 717, 121 P. 2d 196. It was also referred to in *Lambeth v. Bogart,* 155 Kan. 413, 125 P. 2d 377, although the appeal there was dismissed because there was no specification of any kind. We are of the opinion the specification of error in the case at bar does not bring it within the rule of the above cases. It is no mere general complaint that the judgment is wrong or contrary to law. It is more specific and to the effect that as a matter of law the findings of fact do not support the judgment. Although the specification might have been somewhat expanded we think it was sufficient.

Appellant's principal contention is that the description of the real estate as it appears on the tax rolls and on which it is sought to foreclose a lien for taxes, covers and includes the identical land described in the deed to the defendant Clark.

The gist of appellee's answer to that contention is that when the Clark deed was presented to the county clerk, he did not enter a proper description of the real estate upon the transfer record as required by Laws 1877, chapter 145 (G. S. 1935, 67-239), but entered another and different description covering a different tract, or which is indefinite in view of the vacation of a part of Sycamore street.

A preliminary statement may be helpful. In our discussion we shall treat only lot 57, for what is said of it is true of all the lots. This lot, as platted, was 150 feet long east and west, and ignoring effect of vacation of a part of Sycamore street, an identical tract would be described whether it was stated to be lot 57 less the west 50 feet, or the east 100 feet of lot 57. Appellant contends that the vacation of Sycamore street did not affect the lot as platted and that any description of it as platted is sufficient to convey the lot with any land that may be appurtenant to it as the result of the vacation of a part of the street. In his brief, appellee does not go into detail, but, as we understand, his contention is, the effect of the vacation was to increase the length of the lots from 150 to 160 feet, and therefore the east 100 feet of lot 57 does not coincide with lot 57 less the west 50 feet thereof.

The sufficiency of descriptions in conveyances of lots facing on streets or alleys, all or part of which have been vacated, has been considered in a number of our decisions. It is not necessary that all of such decisions be reviewed—those here mentioned are fully illustrative.

In *A. T. & S. F. Rld. Co. v. Patch,* 28 Kan. 470, it appeared that Patch owned certain lots facing on a street which was vacated. The railroad company commenced condemnation proceedings describing the lots by numbers and making no reference to the vacated part of the street. Without detailing other matters, Patch claimed she was entitled to an injunction restraining the company from occupying that part of the property which came to her as a result of vacation of the street. In discussing the effect of the vacation this court, speaking through Brewer, J., said:

"Under those circumstances, we think it fair to consider that it becomes, as it were, a part of the lot—something in the nature of an accretion to it; and, if so, then any conveyance of the lot takes with it this attached portion of the vacated street." (l. c. 473.)

The court held that the vacated portion passed under any conveyance or transfer of the lots, *eo nomine.* In the above case the court did not determine whether upon vacation the vacated land reverted to the original proprietor or to the adjacent landowners. The latter question was decided in *Challiss v. Depot and Rld. Co.,* 45 Kan. 398, 21 Pac. 894, decided in 1891, where it was held the vacated portion becomes "as it were, an accretion or appurtenant of the lot."

It may here be noted there is no contention the vacation in 1879 was not legally sufficient. The statutes with reference to vacation of streets and alleys have undergone numerous changes but at least since the enactment of Laws 1877, chapter 190, it has been provided by statute that upon vacation, the vacated portions revert to the owner of adjacent or abutting lots. It is not necessary that we pursue this phase further.

In *Railway Co. v. Sharpless,* 62 Kan. 841, 62 Pac. 662, it was held:

"A street of a city was vacated and it reverted to the owners of abutting property. An owner of eleven lots adjoining the vacated street mortgaged the same by definitely describing the lots, but no mention was made of the adjoining strip acquired by reversion. *Held,* that the mortgage did not create a lien on the strip." (Syl.)

We next notice *Rowe v. Bowen,* 113 Kan. 641, 215 Pac. 1002. There Mrs. Rowe owned a lot facing on a street which was vacated. About a month later she conveyed to Mrs. Bowen. We need not detail all the facts but Mrs. Rowe made her conveyance supposing she was retaining the vacated portion and Mrs. Bowen took the

conveyance assuming she was getting it. In disposing of this contention the court said:

"The case, as presented falls within the long established rule promulgated in a number of decided cases, that under a statute providing that when a street of a city is vacated it shall revert to the owners of the lots adjoining on each side in proportion to the frontage, and becomes an appurtenance and a part of such adjoining lot which passes under a conveyance by the mere description of the lot by its name. (*A. T. & S. F. Rld. Co. v. Patch,* 28 Kan. 470; *City of Belleville v. Hallowell,* 41 Kan. 192, 21 Pac. 105; *Challiss v. Depot and Rld. Co.,* 45 Kan. 398, 25 Pac. 894; *Showalter v. Railway Co.,* 49 Kan. 421, 32 Pac. 42; *Haseltine v. Nuss,* 97 Kan. 228, 155 Pac. 55.)" (l. c. 642.)

In that case note was also taken of a contention that the case of *Railway Co. v. Sharpless,* supra, established a different rule, but after directing attention to the fact the Sharpless case involved a mortgage, it was said that whether that decision was rightly made, it was not the purpose of the court to modify the rule previously announced. The law of the case as set out in the syllabus is:

"Upon the vacation of a street, in a city of the second class, the vacated lands reverts to the owners of the adjoining lots in proportion to the frontage of the lots thereon and becomes a part of such lots and passes under a conveyance in which the lots are described as originally platted."

The discovery of oil underlying the city of Oxford gave rise to the action decided in *Rothwell v. Veail,* 129 Kan. 679, 284 Pac. 359. In the opinion it is stated that the town of Oxford was platted in 1872. Rothwell owned lots abutting on Cedar street, which was vacated by the legislature in March, 1879. In June, 1879, Rothwell conveyed his lots, described according to the plat, to Scroggin. Among other contentions made, Rothwell's heir claimed Rothwell had never conveyed the vacated portion of the street abutting the lots he sold to Scroggin. This court made a review of our decisions, to which reference is made, and held that the conveyance from Rothwell to Scroggin included half of the street abutting on the lots conveyed:

Another case growing out of the discovery of oil at Oxford was *Roxana Petroleum Corporation v. Sutter,* 28 F. (2d) 159. We need not review the facts dealing with the vacation of certain streets and alleys. In discussing the law applicable the circuit court of appeals, in an opinion by Phillips, J., said:

"It is settled law under the statutes and decisions of Kansas that, when a street or alley of a city is vacated, it reverts to the lots adjoining on each side thereof in proportion to the frontage, and becomes a part of such adjoining lot, and passes under a conveyance by the mere description of such lot by its name or number. *Rowe v. Bowen,* 113 Kan. 641, 215 P. 1022; *Haseltine v.*

*Nuss,* 97 Kan. 228, 155 P. 55; *Atchison, T. & S. F. R. R. Co. v. Patch,* 28 Kan. 470; *Showalter v. Southern Kansas Ry. Co.,* 49 Kan. 421, 32 P. 42; *Challis v. Atchison Union Depot & R. Co.,* 45 Kan. 398, 25 P. 894; *City of Belleville v. Hallowell,* 41 Kan. 192, 21 P. 105, 108." (l. c. 161.)

It is significant that while all of these decisions approve the statement made by Brewer, J., in the Patch case, that the vacated portion of the street abutting a lot becomes something in the nature of an accretion to the lot, or an appurtenant to it, and when involved that a description according to the plat carries with it the vacated portion of the street which it abuts or adjoins, that no one of them mentions or holds that the effect of the vacation is to change or alter the lot line. We are of opinion that a description of the east 100 feet of a designated lot means and intends the east 100 feet of the lot as platted, and if there is land east thereof and appurtenant thereto by reason of vacation of an abutting street it is included, and not that the line of the lot has been changed or that the appurtenant land to the east shall be included in determining what is the east 100 feet of the lot.

During the most of the time here involved, G. S. 1935, 79-2316 was in force. It provided that it should be sufficient to describe lands in all proceedings relative to assessing, advertising or selling lands for taxes to designate the lot and block. In 1941 that section was amended to include the following:

"All of such descriptions which shall indicate the real estate intended with ordinary and reasonable certainty and which would be sufficient between grantor and grantee in an ordinary conveyance, shall be sufficient." (G. S. 1941 Supp. 79-2316.)

Under either of the above statutes, the description of the property on the tax rolls was sufficient and covered the identical lands included in the deed to defendant Clark referred to in finding No. 3 heretofore mentioned.

We have not overlooked the latter part of finding No. 7 quoted above and to the effect that there is no showing on the tax rolls for the years in question with respect to the tract of land as conveyed to Clark. This finding is a mixed one of fact and law. Factually it is literally true because the descriptions were not exactly alike. The finding is based on facts previously found, and the conclusion there is no showing on the tax rolls that the land as conveyed to Clark had been taxed is based on an erroneous view of the law applicable.

We conclude the trial court erred in holding the taxes and assessments for the years in question were void.

In view of our conclusion it is not necessary that we discuss appellant's contention the tax was legally assessed and enforcible against the tract described on the tax roll, even though it be held that such description did not cover the entire tract owned by the defendant Clark.

The judgment of the trial court is reversed and set aside, and the cause remanded with instructions to render judgment for plaintiff and against the defendant.