No. 36,754

BERTHA HAMILTON, *Appellant,* v. HERBERT A. BINGER, *Appellee.*

(176 P. 2d 553)

416

Opinion filed January 25, 1947.

W. Glenn Hamilton, of Topeka, argued the cause, and E. R. Sloan, Floyd A. Sloan and Eldon Sloan, all of Topeka, were with him on the briefs for the appellant.

Willard N. Van Slyck, Jr., of Topeka, argued the cause, and Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey and Robert E. Russell, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover the balance claimed to be due on a real-estate contract. Defendant prevailed and plaintiff appeals.

Material portions of the petition read:

"2. On or about September 8, 1945, the plaintiff and defendant entered into a written contract, a full, true and correct copy of which is hereto attached marked Exhibit 'A' and made a part hereof.

"3. Plaintiff has fully complied with her part of said contract and has heretofore furnished and delivered to the defendant an abstract of title showing marketable title to the real estate described in said agreement to be vested in plaintiff, notwithstanding which the defendant has refused to pay to plaintiff the $300.00 provided for in said agreement.

"Wherefore plaintiff prays judgment against the defendant for the sum of $300.00."

Pertinent provisions of the answer are:

"Further answering, defendant alleges that plaintiff furnished and delivered to defendant an abstract of title as alleged in the third paragraph of the petition, but defendant alleges that said abstract did not show marketable title to the real estate described in the contract attached to plaintiff's petition, but on the contrary, disclosed that plaintiff's title to said real estate was not marketable.

"Wherefore, defendant prays that plaintiff take nothing by her petition; and that this defendant have judgment for his costs."

Clauses of the contract, giving rise to the controversy, provide:

"First party agrees to sell and second party agrees to purchase on the terms hereinafter stated the following real estate situated in Shawnee County, Kansas: [here follows description]

"The consideration is thirty-eight hundred dollars payable thirty-five hundred dollars cash, receipt of which is hereby acknowledged. The balance, three hundred dollars, shall be paid in cash on delivery of abstract of title to second party showing marketable title in first party."

With the pleadings in the condition just related, and an extensive agreed statement of facts alleged to include all claimed defects in the title, the parties waived a jury and submitted the cause to the court for decision.

The trial court found generally for the defendant and rendered judgment in his favor. Its decision, as reflected in the journal entry of judgment, which is quoted *in toto*, reads:

"Now on this 12th day of July, 1946, the above entitled having been submitted to the court on June 28, 1946, on an agreed statement of facts, came regularly on for decision.

"The court, being fully advised in the premises, finds that the abstract of title tendered to the defendant by the plaintiff did not show marketable title in the plaintiff.

"It is therefore ordered by the court that judgment be and the same is hereby rendered in favor of the defendant for his costs."

In due time plaintiff perfected an appeal from the judgment and she now contends the trial court erred (1) in rendering judgment for the defendant and against the plaintiff, (2) in overruling plaintiff's motion for a new trial.

Technically the grounds relied on by appellant for reversal of the judgment in her specification of errors present nothing for review.

We have repeatedly held the first assignment the court erred in rendering its judgment amounts to nothing more than a statement the judgment is wrong and does not specify any error. (*Brewer v. Harris,* 147 Kan. 197, 75 P. 2d 287; *Biby v. City of Wichita,* 151 Kan. 981, 982, 101 P. 2d 919; *Heniff v. Clausen,* 154 Kan. 717, 121 P. 2d 196; *Lambeth v. Bogart,* 155 Kan. 413, 415, 125 P. 2d 377; *Marion County Comm'rs v. Clark,* 157 Kan. 132, 134, 138 P. 2d 449; and *Gale v. Fruehauf Trailer Co.,* 158 Kan. 30, 145 P. 2d 125.)

The second specification of error is not good for several reasons. In the first place, when an action is submitted to the district court for judgment on the pleadings and an agreed statement of facts, no motion for a new trial is required. Under such circumstances no trial errors, making a motion for a new trial necessary or proper, are committed and the only function of the trial court is to determine questions of law. (*Central Fibre Products Co. v. State Tax Comm.,* 150 Kan. 665, 95 P. 2d 353; *Jackson County Comm'rs v. Commission of Revenue and Taxation,* 156 Kan. 585, 134 P. 2d 657; *City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542; *Palmer v. Helmer,* 159 Kan. 647, 650, 157 P. 2d 531.) In the next, considering such a motion as tantamount to a request to the district court to reexamine questions of law involved, it is addressed solely to the discretion of that court and its ruling thereon in and of itself is not an appealable order. (*Jackson County Comm'rs v. Commission of Revenue and Taxation,* supra; *Central Fibre Products Co. v. State Tax Comm.,* supra.) And finally, where, as here, the record discloses that a motion for new trial was made and overruled but neither the motion nor its grounds are set forth, this court cannot ascertain whether error was committed and will not review questions pertaining to the action of the trial court in overruling such motion. (*Hover v. Cockins & McCarroll,* 17 Kan. 518; *Typer v. Sooy,* 19

Kan. 593; *Ervin v. Morris*, 26 Kan. 664; *Illingsworth v. Stanley*, 40 Kan. 61, 19 Pac. 352; *White v. Douglas*, 51 Kan. 402, 32 Pac. 1092; *Cole v. Bower*, 53 Kan. 468, 36 Pac. 1000; and *Lennen v. Ogden*, 98 Kan. 747, 161 Pac. 904.)

From what has been heretofore stated with respect to the strict legal status of a specification of error which merely recites that a judgment appealed from is erroneous it does not necessarily follow that we will refuse to dispose of an appeal upon its merits. The decisions on the point in question, to which we have heretofore referred, are based upon the construction given to Rule 5 of this court providing that "the appellant's abstract shall include a specification of the errors complained of, separately set forth and numbered." On occasions in the past we have been, and perhaps will again be, disposed to show some leniency in the enforcement of such rule. Nevertheless, we desire to once more call attention to its existence and import and warn litigants, who, in the future, may come within the scope of its terms as construed by our decisions, of the likelihood of its application.

So far as the instant case is concerned we note appellee has failed to question the specification. We are also aware the only issue for appellate review is whether the judgment of the trial court holding the abstract of title tendered to the appellee did not show marketable title is to be upheld. Moreover, in fairness to capable counsel for appellant, it should be stated we are convinced the form of the involved specification comes not from lack of knowledge of the rule or intention to disregard its force and effect but is due to a belief that with the record in the state just related we will not, in view of some of our former decisions, enforce its requirements. Therefore, without condoning failure to observe the rule, and with the admonition our action is not to be regarded as a precedent, we shall proceed with consideration of the appeal upon its merits.

Heretofore we have stated there is but one issue involved on appeal. That situation exists because of the nature of the judgment as rendered and the state of the record. To be specific the decree is general in its nature and does not indicate whether it is based upon one or all of the asserted defects in the title. The record is silent on the point and counsel in their argument give us no additional information regarding it. The error assigned, as we have seen, merely amounts to a claim the judgment holding the abstract did not show marketable title was wrong. In such a situation the rule, so elemen-

tal as to require no citation of authority, is that if any one of the factual situations relied on as having that effect make the title unmarketable the decision of the trial court must be upheld. We turn, therefore, to the agreed statement of facts for the purpose of ascertaining if it sets forth a factual situation which required that tribunal to conclude as a matter of law that the abstract of title furnished pursuant to the terms of the contract sued on did not show marketable title in the appellant at the time it was tendered to appellee.

At the outset it must be remembered the object of an abstract is to enable the purchaser of real estate to pass upon the validity of the title and that to enable him to do so it should contain everything material concerning its sources and condition. "The object of an abstract," says Mr. Curwen, in his work on "Abstracts" (section 36) "is to furnish the buyer and his counsel with a statement of every fact and abstract of the contents of every deed on record upon which the validity and marketableness of the title depend, so full that no reasonable inquiry shall remain unanswered, so brief that the mind of the reader shall not be distracted by irrelevant details, so methodical that counsel may form an opinion on each conveyance as he proceeds in his reading and so clear that no new arrangement or dissection of the evidence may be required. The buyer has the right to demand a marketable title. He has a right to demand that the abstract of title shall disclose such evidence of that title as will enable him to defeat any action to recover or incumber the land."

In dealing with the same subject, Mr. Patton in his work on "Titles," 121, § 26, states:

"Since the object of an abstract of title is to enable the buyer and his counsel to determine the validity and marketability of the title, it should contain an abstract of every record upon which these depend, 'so full that no reasonable inquiry shall remain unanswered, so brief that the mind of the reader shall not be distracted by irrelevant details, so methodical that counsel may form an opinion on each conveyance as he proceeds in his reading, and so clear that no new arrangement or dissection of the evidence may be required.' An able text-writer on the subject has said: 'Generally considered, a stipulation to deliver a good and sufficient abstract is complied with where the synopsis furnished purports to be a full search through the public offices, is arranged in an orderly manner for perusal, and its correctness is certified by some person of known skill and financial responsibility.' More than this could not reasonably be demanded; but it would seem that, for the double purpose of convenience and safety, nothing less should be accepted!"

Similar statements, although differently worded, are to be found in 1 C. J. S. 381, §·2; 1 C. J. 365, § 2; 1 Am. Jur. 155, § 1.

Turning to the record we find that the twelfth factual situation set forth in the agreed statement of facts reads:

"12. The certificate to the abstract of title down to October 27, 1909, reads as follows:

"STATE OF KANSAS, SHAWNEE COUNTY, ss.

"We, The undersigned, Do hereby certify that the foregoing is a correct Abstract of all conveyances or other instruments in writing now of record in the office of Register of Deeds in and for said county, which in any way affect the title to the real estate therein described; that we have carefully examined the record of said conveyances, and that they are properly executed, indexed and recorded, except as therein set forth; that said Abstract contains a statement of all Judgments and Suits Pending in the District and Circuit Courts of the United States for the District of Kansas, of all Judgments, Suits Pending and Mechanics' Liens in the Third Judicial District Court, Superior Court or Circuit Court in and for said county, and of all Unpaid Taxes and Unredeemed Tax Sales of Record in the office of the Treasurer of said county, that in any way constitute a lien on said real estate.

"There is no certificate covering probate court records for this period of time. The above form of certificate, or similar forms, were customarily in use in Shawnee County and vicinity down to about 1913 ānd until such date the customary certificate to an abstract did not cover probate court records."

From what has just been quoted it appears, in fact the parties concede, that the certificate of the abstract tendered to the appellee and on which the trial court based its judgment did not cover probate court records affecting the land involved in the action from the date of acquisition of title by patent from the United States down to and including October 27, 1909.

Supplementing what has just been said we note the agreed statement elsewhere discloses the abstract purports to contain proceedings had in the probate court of Shawnee county within the period of time just mentioned which did affect the title to such real estate.

Thus it becomes obvious that in rendering its decision one all-important question facing the district court was whether an abstract of title with a certificate which did not even purport or pretend to show that it covered all probate court proceedings affecting the title to the land described in such abstract showed a marketable title in such real estate. In our consideration of that subject we proceed upon the premise that when a contract for the sale and purchase of land provides a vendor shall furnish the vendee with an abstract showing marketable title the abstract must show on its face a good title in the vendor (55 Am. Jur. 734, § 297; Thompson on "Abstracts

and Titles," 14, § 9), and that the showing of such a title in the abstract is a condition precedent to be performed by the vendor before he will be permitted to recover any balance claimed by him to be due on a contract for the sale of real estate (66 C. J. 957, § 664; Thompson on "Abstracts and Titles," 12, § 8; Patton on "Titles," 119, § 25).

On the point in question, Mr. Thompson in his work "Examination of Titles," 93, § 76, says:

"The concluding certificate of the abstractor should be carefully scrutinized to ascertain if he has searched all the offices where instruments affecting real estate are required to be recorded, as well as to forestall any attempt to limit his liability by vague and obscure statements. There should be no subtle meaning or wording of the certificate. It should correctly describe the land, and make a clear cut and plain statement, 'that the above and foregoing abstract of title is a true, correct and complete abstract of all conveyances and other instruments of writing on file or of record in the office of the recorder, or other office or offices where such things are to be found; that the abstract contains an abstract or sufficient notation of any and all proceedings had in the civil and probate courts of the county affecting the title; that there are no judgments, mechanics' liens, mortgages, foreign executions, attachments, suits pending, transcripts of judgments from the United States Circuit or District Courts, or any other such matters which in any way affect the title to said real estate, except as shown in the abstract.'"

The same author in his work on "Abstracts and Titles," 320, § 209, states:

"Having completed his work of compiling the abstract there should be included at the end thereof a complete, definite and unqualified certificate as to the various searches made in compiling the abstract, and that these searches cover all public records available in which might be any particular thing that would affect the title of the property being abstracted or which would be a lien or charge against it. . . . An abstracter may limit his liability by a certificate that he has examined the records in certain offices only. Thus where a certificate stated that a careful search had been made of the records of the office of the county clerk, the clerk of the district court, the county treasurer, and that there were no liens of record upon the property described except as mentioned in the abstract, it was held there could be no recovery in a suit upon the bond of the abstracter for a loss occasioned by the omission from the abstract of a prior mortgage upon the property, then of record in the office of the register of deeds. . . . The certificate should first correctly describe the land covered by the search. It should then proceed in a form similar to the following:

" 'The above and foregoing abstract of title is a true, correct and complete abstract of all conveyances and other instruments of writing on file or of record in the office of the recorder, or other office or offices where such things are to be found; that it contains an abstract or sufficient notation of any and

all proceedings had in the civil and probate courts of the county affecting the title; that there are no judgments, mechanics' liens, foreign executions, attachments, suits pending, transcripts of judgments from the United States Circuit or District Courts, or any other such matters which in any way affect the title to the said real estate . . .'"

A somewhat similar statement is to be found in Warvelle on "Abstracts," 118, § 103.

In Patton on "Titles," 122, § 26, we find the following statement in connection with a discussion regarding the sufficiency and essentials of an abstract:

"The examiner should also see that the extent of the search, whether stated in the caption or in the certificate, is broad enough to cover all records which will affect the title up to the time that it is conveyed to his client."

To the same effect is 1 C. J. S., 383, § 4, where it is said:

"It is as necessary and proper that an abstract of title show the absence of judgments and liens affecting the land, where there are none, as that it show their existence where they do exist . . ."

Decisions supporting the general principles heretofore quoted, perhaps because the rule an abstract on its face must show good title in the vendor makes the proposition almost elemental, are not too numerous. Counsel cite, and we find, no decisions of this court dealing specifically with the subject. However, it has been dealt with elsewhere.

In *Billick v. Davenport,* 164 Iowa 105, 145 N. W. 470, it was held:

"The judgments of a Federal Court constitute liens upon real estate located in the county where the court is held, and an abstract failing to contain a certificate showing that there were no judgments of that court affecting the title was not merchantable." (Syl. ¶ 4.)

See, also, *Continental Oil Co. v. Mulich,* 70 F. 2d 521, where it was said.

"The failure of the abstract to contain a certificate as to federal court judgments was cured, as requested in the title opinion, by a certificate of the clerk of the court showing there were no such judgments." (p. 524.)

That there is sound reason for the rule announced in the legal treatises, textbooks and decisions to which we have referred, is definitely indicated in *Thomas v. Carson,* 46 Neb. 765, 65 N. W. 899, where it was held:

"T., the plaintiff, purchased a real-estate mortgage, relying upon the certificate accompanying an abstract of title, in which it was recited that C., the abstractor, had carefully examined the records of the office of the county clerk, the clerk of the district court, and county treasurer; and that there were of

record in said offices no liens upon the property described, except as in said abstract mentioned. Held, that C. is not liable on his bond on account of the omission from said abstract of a prior mortgage upon the property conveyed, then of record in the office of the register of deeds." (Syl. ¶ 3.)

Based on the foregoing authorities, we have no difficulty in concluding that in this state, where probate courts are courts of record and have always had jurisdiction and control of certain matters affecting real-estate titles, an abstract which fails to cover the probate court records of the county wherein the land described in the abstract is located does not show a marketable title. It follows the judgment of the trial court must be approved.

Once the conclusion just announced is reached another sound reason for affirming the judgment presents itself. The burden is on the party alleging error to show it affirmatively by the record (see 2 Kan. West Dig., "Appeal and Error," §§ 901 and 1135; 5 C. J. S. 1331, § 1848). Here there is no affirmative showing of error on the part of the trial court.

In conclusion, we note that counsel for both appellant and appellee request that we pass upon all questions of title to be found in the agreed statement of facts. This, with due deference to counsel, we must decline to do. The record presented to us does not disclose how the trial court ruled on the questions which the parties now seek to have determined. In that situation our function is not to speculate on what the trial court's ruling may have been on matters not presented by the appeal but to determine whether its judgment as rendered is sustained by the record.

The judgment is affirmed.