THE CITY OF HUTCHINSON, *Appellee,* v. JOHN T. DANLEY, substituted for CLINTON C. HUTCHINSON, *Appellant.*

No. 17,835.

SYLLABUS BY THE COURT.

1. CITY PARK—*Vacation—"Adjacent" Lot Owners—Title.* The ordinary meaning of the word "adjacent" is close, lying near to but not actually touching.

2. —————— *Same.* In section 5 of chapter 190 of the Laws of 1877, an act relating to the vacation of town sites and parts thereof, it was provided:

"The alleys, streets or other public reservations so vacated shall revert to the owner or owners of lots adjacent or abutting thereto, according to the frontage of said lots or land."

*Held,* that the word "adjacent" as there used applies to and includes lots fronting on a vacated park which is surrounded by streets, and under that provision the park when so vacated reverted to the owners of such lots.

Appeal from Reno district court. Opinion filed January 11, 1913. Affirmed.

*W. H. Rossington, Charles Blood Smith,* and *Samuel*

*Barnum,* all of Topeka, and *F. Dumont Smith,* of Hutchinson, for the appellant.

*Frank L. Martin, Walter F. Jones,* and *Van M. Martin,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The ownership of a block of ground which has been used as a park for many years is involved in this action. In 1872 C. C. Hutchinson laid out the city of Hutchinson, and the block of ground in controversy was then dedicated as a public park and has since been known as Base Ball Park. In 1877 a creek which ran through the park was straightened by the city. In it was a swimming pool and fishing place, to which the public has resorted ever since the plat was filed. The block has been used as a common and as a playground for children. In 1888, on the application of Hutchinson, the board of county commissioners made an order by which they undertook to vacate the park. The ground stated in the application, which was signed alone by Hutchinson, was that the city had not planted trees and beautified and adorned the park as he intended and supposed that the city would do when the dedication was made. This proceeding to quiet title was brought about twenty-one years ago. A petition and bond for removal to the federal court was at once filed by Hutchinson, but in 1895 the case was remanded back to the state court. No one appears to have recognized the existence or pendency of the action from that time until 1907, and then it was found that all of the original files of the case had been lost. In 1910 John T. Danley came into the case, alleging that he had acquired the interest of Hutchinson, and in his cross-petition alleged that the park had been vacated and that by virtue of the conveyance from Hutchinson he was the absolute owner of the block and he therefore asked to have the title quieted in him. The park, it appears, was never as-

sessed for taxation nor placed on the tax roll until 1908 when some one caused it to be entered on the tax roll, but no taxes were ever paid upon the tract. In 1902 an organization of women who lived in the vicinity formed a park association and with the consent of the city authorities made permanent improvements on the park. Entertainments were held there by the women, and with the money derived from this source as well as some which was donated the park has been beautified and improved. The trial court held against the claims of Danley, the cross-petitioner, and he appeals from the judgment.

Much argument has been made in regard to the claimed abandonment of the action, the bar of the statute of limitations and the invalidity of the order of vacation on the ground that the petition was not signed by the owners of the abutting or adjacent land or those who had a right to petition for vacation, and also because the grounds upon which vacation was asked are insufficient to give the board authority to make a vacation, but it will be unnecessary to consider these questions. The judgment of affirmance will be placed on the ground that under the conceded facts, and granting there was a valid vacation, the property did not revert to the original dedicator or his grantee, and therefore the appellant had no interest in or title to the block.

The execution and recording of the plat by C. C. Hutchinson in which the block in question was reserved for a park operated as a conveyance and vested the fee of the block in the county in trust and for use by the public as a park. (Gen. Stat. 1909, § 5523.) It has been said that under such a dedication "The fee passes from the owner beyond power of resumption and vests absolutely in the county, forever, in trust for public use." (*Gadarl v. City of Humboldt*, 87 Kan. 41, 42, 123 Pac. 764.) There was a statutory dedication of the block and there was a statute governing the

vacation of improved town sites and portions thereof and the reversion of the same when the vacation proceedings relied on by appellant were had. It was there provided that:

"The alleys, streets or other public reservations so vacated shall revert to the owner or owners of lots adjacent or abutting thereto, according to the frontage of said lots or land." (Laws 1877, ch. 190, § 5.)

It is not denied that the legislature had the power to provide for the reversion of a public reservation in case of a vacation, but it is contended that when the vacation proceedings occurred in this instance there were no lots abutting on or adjacent to the park whose owners could claim title by reversion. The park was, as we have seen, surrounded by streets which are still devoted to the use of the public, and the contention is that as no lots touch the park on either the ends or sides thereof none was adjacent to or abutted thereon, and hence there was no one to whom the title of the park might revert by statute. For that reason it is insisted that the common-law rule of reversion must govern. There would be much stronger reasons for this view if the term "adjacent" had not been used by the legislature. Although that term is sometimes employed in the sense of adjoining or abutting, its ordinary meaning, as defined by lexicographers, is close, in the neighborhood of, lying near to but not necessarily touching. That was the meaning given to the word as employed in a statute authorizing the consolidation of cities adjacent to each other. (*The State, ex rel., v. Kansas City*, 50 Kan. 508, 31 Pac. 1100.) A like meaning was attributed to the term in an act authorizing boards of education to annex adjacent territory to the city for school purposes. (*Board of Education v. Jacobus*, 83 Kan. 778, 112 Pac. 612.) In its primary meaning "abutting" implies a closer proximity than does the term "adjacent," and whether the latter is to be interpreted as lying near to or actually adjoining depends largely

on the context in which it is used and the purpose which the legislature was seeking to effect. As the legislature employed both terms effect is to be given to each according to its ordinary meaning, if there is room for the application of such meanings. (1 Words and Phrases, p. 184; 1 Cyc. 764; 1 A. & E. Encycl. of L. 633.)

"Abutting" is an apt term to use as applied to a reversion where there is a vacation of a street or alley, for in such a case lots touch or adjoin them, but it is not appropriate to express the idea that lots are lying near to but do not actually adjoin the vacated reservation. "Adjacent" is a suitable term to use when lots face upon a park or public square and there is a street intervening between them. Recognizing that there were degrees of proximity of the vacated portion to the surrounding lots and that as lots would adjoin a vacated street or alley the word "abutting" was used, and as the lots fronting on a vacated reservation or park would not be in actual contact with it the legislature chose to use the term "adjacent" and thereby provided for reversion of the park to the owners of lots which faced upon but did not touch the park. That the owners of lots facing upon public reservations have a peculiar interest in such reservations, one of which they can not be deprived either by the dedicator or by the legislature, was determined in *Comm'rs of Franklin Co. v. Lathrop,* 9 Kan. 453. There the owners of a town site dedicated a part of it as a court-house square and it was accepted and used for county purposes. Lots facing upon the square were sold by the owners of the town site to others who made valuable and lasting improvements thereon, and the lots were greatly enhanced in value by reason of their fronting on the public square. The commissioners of the county obtained the passage of an act authorizing the sale of this block in order that the proceeds of it might be used for the construction of a court house, and the

board was proceeding to dispose of the property when the adjacent lot owners obtained an injuction against the sale. It was decided and stated in one paragraph of the syllabus that:

"Individuals purchasing from the town proprietors, lots facing on such public grounds, subsequent to their dedication, and making lasting and valuable improvements thereon, when lots are enhanced in value by their position, and would be made of less value by a change of such grounds from public to private use, have a vested interest in the trust which no legislature can abridge or destroy. And the repeal of a statute under which a right has vested, does not divest or destroy that right." (Syl. ¶ 6.)

The court did not interpret the section of the statute relating to reversion but it did point out that the owners of lots facing on a park or other public grounds can acquire an interest in the trust arising from the dedication, and it is a fair inference that the protection of this interest induced the enactment of a provision that upon a vacation of such reservations they shall revert to the owners of the adjacent lots or lands.

The park, therefore, did not revert to the original dedicator, Hutchinson, nor to his grantee, the appellant, and assuming that there has been a valid vacation of the park the appellant has no interest in it nor any right to complain of the decision against him. The judgment is affirmed.