[Civ. No. 30227. Second Dist., Div. Two. Apr. 20, 1967.]

MERRILL F. MURRAY et al., Plaintiffs and Appellants, v. TITLE INSURANCE AND TRUST COMPANY, Defendant and Respondent.

Chas. V. Eckert III and Robert R. Stone for Plaintiffs and Appellants.

John R. Engman, Everett H. Aspenson, Keith Holaday, Edward M. Patterson and J. Roger Gelsinger for Defendant and Respondent.

FLEMING, J.—In 1962 the Murrays purchased property in Santa Barbara County substantially described as: Lot 12 of Block 15, according to survey and plan filed in the office of the county recorder on April 17, 1888, in Book 561 of Miscellaneous Records. According to the original survey, lot 12 was a corner lot bounded by Orange Avenue on the west and by Rutherford Street on the south. The Murrays secured a title report and a policy insuring their title to lot 12 from the defendant Title Insurance and Trust Company and proceeded to construct a building on the lot. Subsequently, they discovered that the original road south of their lot, Rutherford

Street, had previously been abandoned and that neither adjacent roadway nor easement of access existed to the south. The Murrays sued the title company in contract for damages under their policy and in tort for negligent misrepresentation, claiming they had been led to believe in the existence of a road by the description of the property in their title report and in their policy of title insurance. The trial court sustained the title company's demurrer to plaintiffs' amended complaint without leave to amend, and the case is here on appeal.

Plaintiffs' argument runs: they purchased property described by reference to a map filed in 1888 which showed a lot bounded by Orange Avenue on the west and Rutherford Street on the south. A purchaser of property described by reference to a recorded map which shows the property bounded by a street is presumed to acquire title to the center of the bounding street under the following sections of the codes: Civil Code, § 831: "An owner of land bounded by a road or street is presumed to own to the center of the way; but the contrary may be shown." Civil Code, § 1112: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." Code Civil Procedure, § 2077 subdivision 4: "When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, except where the road or thread of the stream is held under another title." Plaintiffs argue that by reason of these sections they were entitled to presume ownership of the property to the center of the bounding street. (*Neff* v. *Ernst*, 48 Cal.2d 628, 635 [311 P.2d 849].) The failure of the title they got to equal the title they were entitled to presume amounted to a defect in title for which they were entitled to compensation under their policy of title insurance, or alternatively, for which they were entitled to damages for negligent misrepresentation.

In defense, the title company initially relies on certain policy exclusions purporting to restrict its coverage to the specific lot described in the policy and to disclaim responsibility for defects in the title to adjoining streets, and the like. We are not impressed with this defense, and we have no hesitancy in finding the title company's blanket exclusions from the coverage of its policy wholly inconsistent with the protec-

tion which the face of the policy purports to offer. (*Steven v. Fidelity & Casualty Co. of New York,* 58 Cal.2d 862, 879-883 [27 Cal.Rptr. 172, 377 P.2d 284].) When a title company insures an owner's title to property, by implication it likewise insures the presumed ancillary titles and privileges attached to the property and assumes liability for defects in those titles and privileges. In the present case, for example, if plaintiffs were entitled to presume ownership in fee to the center of the streets adjoining their lot, they were likewise entitled to presume title insurance coverage against defects in title coextensive with their presumed ownership.

The title company, however, does not rely solely on the printed exclusions in its policy to absolve it from liability, but defends on the additional ground that a presumption of ownership in Rutherford Street by the Murrays never arose, because at the time of their purchase Rutherford no longer had any existence as a street. Its abandonment appeared on the records of the Santa Barbara recorder's office, and the original map of 1888 contained a specific notation on its face referring to the abandonment of certain streets set out in another volume of the records. The title insurance policy itself included a map which showed Rutherford Street under the inscription ''RUTHERFORD ABANDONED.'' The parties stipulated that neither plaintiffs nor their grantors had ever held title to any part of Rutherford Street. In the absence of an existing street, the title company argues, plaintiffs were not entitled to presume ownership to an adjacent strip because it had been designated in 1888 as Rutherford Street, and plaintiffs were not entitled to compensation under their policy for the failure of their presumption.

The general issue in this cause, therefore, involves the extent to which coverage is implied under a policy of title insurance. How far must a policy go in order to meet the expectations of a purchaser of real property who insures his title? In analyzing this question in the light of our specific problem we shall consider implications of coverage under four different types of conveyances: (1) a conveyance of property by reference to a map which shows a bounding street; (2) a conveyance by reference to a map which shows a bounding street, abandoned in fact but not of record; (3) a conveyance by reference to a map which shows a bounding street abandoned of record, when the grantor owns the property-in-chief and the bounding strip and (4) the previous situation, when the properties are under separate ownership.

■ 1. In a conveyance of property by reference to a map which shows a bounding street, a grantee can correctly claim a presumption of ownership to the center of the street. ■ In view of the strength of this presumption and its longstanding acceptance in the law of real property, we think a title insurance policy on property bounded by a street necessarily includes within its coverage insurance of the grantee's title to the center of the bounding street. (Civ. Code, §§ 831, 1112; Code Civ. Proc., § 2077, subd. 4.) In the present case, for example, under their policy of title insurance plaintiffs are entitled to rely on their ownership of half the bounding street of Orange Avenue. Should any defect or default develop in that ownership they would become entitled to compensation under their policy of title insurance. (*Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386 [197 P. 113]; *Lagomarsino* v. *San Jose etc. Title Co.*, 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80].)

■ 2. Where property is conveyed by reference to a map which shows a bounding street of record which in fact has been abandoned, a grantee is again entitled to rely on the general presumption of his ownership to the center of the street and to presume that a title policy insures his purchase in accordance with the statutory presumptions. In *Anderson* v. *Citizens Savings & Trust Co.*, 185 Cal. 386 [197 P. 113]. California adopted the rule that a conveyance of property by reference to a map which shows a bounding street conveys the grantor's fee to the center of the street, even though the street has been previously abandoned. M owned a lot bounded by streets which had been abandoned in 1898. M conveyed his lot to L in 1911 by reference to a map which showed the streets as existing and not as abandoned. Thereafter, M claimed title to the adjoining strips created by the abandonment of the streets. The court ruled against M, holding that a grantor who owned both lot and adjacent strips created by abandoned streets was presumed to have conveyed his entire interest in the property to his grantee, both lot and strips. The court summarized the rule: "In other words, where land is conveyed by a description which bounds it by a street, and the grantor is the owner of the fee in the street, as he is presumed to be, the real boundary line of the property is not the side line of the street but its center line." (185 Cal. at p. 392.)

The only exception to the general rule of the *Anderson* case involves lots and streets laid out without any intention of actual or prospective use, an exception of no application here.

(*MacNicol* v. *East Coalinga etc. Corp.*, 22 Cal.2d 742 [140 P.2d 793].)

3. The third situation involves a conveyance of property by reference to a map which shows a bounding street abandoned of record, by a grantor who owns both the property-in-chief and its adjacent strip. Here we have two somewhat conflicting considerations working against each other. On the one hand, for example, a grantee is not entitled to rely on a map of 1888 in its original form and ignore later information on the face of the same map that certain streets have been abandoned. Reliance on an original map in disregard of subsequent changes in the recorded title would be comparable to reliance on a statute of 1888 in disregard of legislative amendments in subsequent years. On the other hand, the law of real property abhors the proliferation of gores and strips under separate ownership and strongly favors a policy which passes the title of adjoining strips to the purchaser of the abutting property at the time of his acquisition.

The conflict between these considerations, insofar as it affects grantor and grantee, was resolved in *Neff* v. *Ernst,* 48 Cal.2d 628, 635 [311 P.2d 849], and it is now clear that a record of street abandonment is not the decisive factor in determining what has been conveyed. In that case the record of a tract under common ownership showed that Bard and Oak Streets had been abandoned in 1926. Plaintiffs in 1938 bought property bounded by the abandoned streets from the owner of the tract, and, in so doing, they were held to have acquired a half interest in the abandoned streets from the grantor. Although reference in the deed to the abandonment of the two streets gave sufficient notice of the vacation of public easements, said the court, it did not rebut the presumption that the grantor intended to convey title to the center of the abandoned streets. ■■ "It is the general rule that it will be presumed that where property is sold by reference to a recorded map the grantee takes to the center of the street or streets shown on the map as bounding the property, even though the streets shown therein appear to have been vacated or abandoned or the deed itself refers to the streets as having been vacated or abandoned." (48 Cal.2d at p. 635.)

Thus the law between grantor and grantee. But the law of conveyancing does not necessarily determine the implications to be drawn from a policy of title insurance, and we discuss that subject in the next part of our opinion.

■■ 4. Our final situation involves a conveyance by refer-

ence to a map which shows a bounding street abandoned of record, where ownership of the main property and of the adjacent strip created by the abandonment of the street has become severed. Here the presumption that the grantor intended to convey both parcels has no area within which to function, for the grantor cannot be presumed to have intended to convey property he did not own. Nor does the policy against fragmentation of ownership of real property govern, for fragmentation had already occurred, and separate ownership is an accomplished fact. Clearly, under these circumstances a grantee acquires no title nor claim of title from the grantor. Nonetheless, plaintiffs argue that when they purchased property described by reference to a map which showed a bounding street, even one which had been abandoned, they were entitled to rely on the presumption they would acquire title to the center of the abandoned street; that when their reliance proved misplaced, they were entitled to compensation under their policy of title insurance.

The flaw in this reasoning lies in its assumption that a grantee can close his eyes to a record which shows an abandoned street and draw the same inferences he would be entitled to draw from the record of an existing street. ▮ When the record shows an abandoned street, we think the grantee is put on notice that the statutory presumption of title derived from the existence of a bounding street may not apply, except in the special circumstance of continued common ownership of the property and its adjacent strip. It was clearly ascertainable on the public record that Rutherford had been abandoned as a street some time subsequent to 1888 and, therefore, the presumption from the existence of a bounding street had no direct application to the conveyance because no such street legally existed. The possibility that an interest in an adjoining strip might not pass with an interest in the property-in-chief was made clear in *Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386, 394 [197 P. 113], where the court said: "It may likewise well be that the rule would not apply to the conveyance of a lot bounded by a street where the street is described as abandoned. The final question after all is one as to the intention of the parties, and it would seem not unreasonable to consider such a description as one of a lot bounded by what is now private property, although once a street, so that the real boundary was the line of that property." The court then went on to point out that ". . . the description in this case is a description of the lot as shown by

the map, and the map shows the street as existing and not as abandoned, so that by the description the boundary line of what is conveyed would normally be the center line of the street as shown.''

█ While it is true that during the time the property-in-chief and the abandoned street remain under common ownership the presumption in favor of a conveyance of both entities operates against the grantor's interest and in favor of the grantee (*Neff* v. *Ernst,* 48 Cal.2d 628 [311 P.2d 849]), even between grantor and grantee the presumption is only a presumption which may be rebutted. The court so ruled in *City of Redlands* v. *Nickerson,* 188 Cal.2d 118 [10 Cal.Rptr. 431], a case in which the presumption was held not to apply to a conveyance of property described by metes and bounds. Similarly, the exception in Code of Civil Procedure, section 2077 subdivision 4 is instructive : ''When a road, or stream of water not navigable, is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance, *except where the road or thread of the stream is held under another title.*'' (Italics added.)

Thus far our discussion under this point has focused on grantor and grantee. Our actual problem, however, involves the liability of a third party, an insurer of title under a policy of title insurance. █ When title to property with a bounding street whose existence is not disputed by the record is insured for a fee by a title insurance company, we think the benefits of the usual presumptions derived from the law of conveyancing are included within the coverage of the insurance. █ On the other hand, when the record shows that the insured property is adjacent to an abandoned street, we do not think a policy of title insurance to a specific lot insures title by implication to the adjoining strip created by the abandonment of the street. Under these circumstances a grantee has no right to expect that ownership of a lot will presumptively comprehend ownership in an abandoned street. To the contrary, the grantee is on notice he may be wholly without rights to the abandoned street. If he should happen to acquire an interest in the adjoining strip by reason of its continued common ownership by the grantor, then that would become an unexpected plus to his investment. But if the contrary should result, we do not think he would have a valid claim against a title company which had insured his title to a specific lot. █ Coverage of title insurance extends to reasonably anticipated implications of ownership which attach

to the insured property by reason of the record, but does not extend beyond that point. In our view a title company is not liable under a policy of title insurance for defects in the title to adjacent streets in either our third or fourth situations, comprising those instances in which a bounding street is shown on the record as having been abandoned. Consequently, in this case we hold the title company not liable under its policy.

 The second cause of action charged the title company with negligent misrepresentation which caused plaintiffs to act under the mistaken belief they would acquire a title and easement in the street shown as Rutherford. We have no information in the cause on the actual use or appearance of the property and no way of knowing whether plaintiffs were justified in acting on their belief. But the claim of misrepresentation by the title company will not survive a close inspection of the policy. On the map attached to the policy the area south of plaintiffs' property is described as "RUTHERFORD ABANDONED." The misrepresentation, then, boils down to the depiction on a map of an abandoned street accurately described as such. We do not believe plaintiffs can use the map attached to the policy and the original map in the recorder's office to create the representation of a bounding street and simultaneously ignore the specific description in the policy of "RUTHERFORD ABANDONED" and the specific information on the recorder's map referring to its abandonment. Plaintiffs are not privileged to draw technical presumptions of ownership from the legal description of the property contained in the policy and ignore the more specific, more positive information on the subject provided in the policy itself. Doubtless a specific disclaimer in the text of the policy of any interest in "RUTHERFORD ABANDONED" would have given plaintiffs a better understanding of the title they were acquiring. But enough information to dispel any presumption of an interest in Rutherford was provided in the policy, and the title company is not liable for misrepresentation.

Judgment affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied May 15, 1967, and appellants' petition for a hearing by the Supreme Court was denied June 28, 1967.