(563 P.2d 1086)

No. 48,260

J & S BUILDING COMPANY, INC., *Appellant,* v. THE COLUMBIAN TITLE & TRUST COMPANY, *Appellee.*

Opinion filed April 22, 1977.

*H. Thomas Payne* of Payne & Jones, Chartered, of Olathe, and *F. Allen Speck* of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, for the appellant.

*Carl L. McCaffree* of McCaffree & Grimshaw, Chartered, of Olathe, and *Gerald L. Goodell* of Goodell, Casey, Briman & Cogswell, of Topeka, for the appellee.

HARMAN, C.J., REES and SPENCER, JJ.

SPENCER, J.: In an action against a title insurance company for damages resulting from an alleged defect in title to real estate, judgment was rendered for defendant and plaintiff appeals.

This case was submitted to the trial court upon stipulated facts in substance as follows:

Prior to January 18, 1964, Joseph W. McMurray and Marie McMurray, husband and wife, were the fee owners of the following described tract of land:

Lots 1 to 6 inclusive, and Lots 8 to 11 inclusive, resurvey of Lots 3 and 15, Sunset Hill, a subdivision in the City of Overland Park, Johnson County, Kansas.

On January 18, 1964, the McMurrays conveyed this real estate to Frank R. Johnston and Fern Johnston by warranty deed which contained the following reservation:

"The grantors herein do expressly reserve unto themselves, their heirs, successors and assigns, all right, title and interest of the grantors in and to the right-of-way of the Strang Line and the right-of-way of Locust Street as platted, if any. It is the intent of the within Warranty Deed to convey only the property within the platted boundaries of the lots above described and to reserve to the grantors any present title and interest in, or rights of reversion to any property not within the boundaries of said lots."

This deed was duly recorded on February 27, 1964.

On March 31, 1965, Frank R. and Fern Johnston, with others, conveyed the real estate to the plaintiff. The legal description of the tract so conveyed is identical to the description of the tract owned by the McMurrays prior to January 18, 1964. This deed did not set forth any exception for the interests purported to have been reserved in the deed of January 18, 1964, from the McMurrays to the Johnstons.

Under date of April 21, 1965, the defendant issued its title insurance policy whereby it undertook to insure the plaintiff as follows:

". . . [A]gainst all loss or damage which the party guaranteed shall sustain by reason of defects in the title of the party or parties as set forth in Schedule A below to the real estate or interest therein described, or by reason of liens or incumbrances affecting the title, at the date hereof, excepting only such defects, liens, incumbrances and other matters as are set forth in Schedule B below.

"This Company agrees to defend, at its own cost and expense, the title, estate or interest hereby guaranteed in all actions or other proceedings which are founded upon, or in which is asserted by way of defense, a defect, claim, lien or incumbrance against which this policy guarantees."

Schedule A sets forth the title guaranteed by the policy as "FEE SIMPLE TITLE vested in J & S Building Company, Inc.," and describes the real estate as hereinbefore set forth. Schedule B makes reference to special exceptions, none of which relate to the McMurray reservation.

On the date the title insurance policy was issued and at all other times relevant to this cause, there existed a recorded plat of the tract of land in question showing the lots as described in the conveyances mentioned as well as in the insurance policy and the two streets here involved which had been dedicated for public use. A copy of that plat is a part of the record on appeal.

Under date of January 16, 1967, the city of Overland Park, Kansas, enacted ordinances vacating the two streets adjoining the subject real estate pursuant to the authority of K.S.A. 13-443.

The record reveals that under date of March 16, 1972, plaintiff sold the tract in question to the Gas Service Company. In connection with this sale plaintiff was required to furnish a title insurance policy. Pursuant to this requirement and in anticipation of the sale, on November 8, 1972, plaintiff secured a commitment for title insurance from Chicago Title Insurance Company on the real estate above described, except:

". . . [T]hat part of Lots 6 and 10 conveyed to Overland Park by deed recorded as File No. 906333, in Volume 821, at page 522, together with the Northerly ½ of vacated Locust Street lying Southerly of and adjacent to Lots 1 thru 5, and the East ½ of vacated King Street (Howard Avenue) lying West of and adjacent to Lot 3 and vacated King Street (Howard Avenue) lying between that part of the premises in question in Lots 4, 6, 8, 9 and 10."

This commitment referred specifically to the conveyance by the McMurrays to the Johnstons recorded February 27, 1964, and required that a conveyance from the McMurrays be secured as to that part of the vacated streets included in the land description.

Contending that the interest reserved by the McMurrays (ad-

mittedly not referred to in defendant's policy on the tract) constituted a defect under that policy, plaintiff made claim against the defendant, which claim was subsequently denied.

Thereafter, plaintiff paid the sum of $5,000 to the McMurrays for a quitclaim deed to whatever interest in the vacated streets may have been reserved, retained or attempted to be reserved or retained by the January 18, 1964, deed from the McMurrays to the Johnstons hereinbefore referred to.

The trial court entered its final conclusions of law as follows:

"1. Fee simple title to real estate adjoining streets which have been dedicated pursuant to K.S.A., Section 12-406 includes a reversionary interest in such streets to the center line thereof in proportion to the frontage of such land, except where such streets may have been taken for public use in a different proportion, in which case such title includes a reversionary interest in the same proportion as such streets were taken from such adjoining land.

"2. The fee simple owners of such land may effectively reserve or retain such reversionary interest in a conveyance of such land by deed.

"3. A conveyance by deed in the chain of title in which the grantors have reserved or retained such reversionary interest does not constitute a defect affecting the title to such land within the terms of the title insurance policy issued to plaintiff by defendant The Columbia Title & Trust Company.

"4. The reservation in the deed from Joseph and Marie McMurray to Frank R. and Fern Johnston, a copy of which is attached to the stipulation of facts filed herein, was not a title defect on the date of the issuance of said title insurance policy and was not the basis of a bona fide claim against the title to the plaintiff to said tract.

"5. It is hereby determined and ordered that plaintiff take naught by its petition and its prayer for relief is denied."

The principal issue here involved is whether at the time the McMurrays attempted to reserve an interest in the streets adjoining their lots, they owned any interest in the streets which they could reserve. In 26 C.J.S., Deeds Sec. 139a, p. 1003, it is stated:

"To be valid a reservation or exception must have something to operate on; it must refer to something conveyed.

"An exception or reservation is void . . . where the grantor had no interest or estate in the thing excepted."

Thus, the question becomes whether under Kansas law the owner of a city lot, described only by lot number and subdivision, has any interest in an adjoining statutorily dedicated street which may effectively be reserved so as to pass to him when the street is vacated after he has conveyed his interest in the lot itself.

The governing statutes are as follows:

K.S.A. 12-406. "Such maps and plats of such cities and towns, and additions, made, acknowledged, certified, filed and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses in the county in which such city or town or addition is situated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose, and the recording of such map or plat shall not constitute a conveyance of any interest in the oil, gas and other minerals underlying the avenues, streets, lanes, alleys and other parcels therein named or intended for public uses. The provisions of this act shall apply to all maps or plats, heretofore or hereafter made, acknowledged, certified, filed and recorded with any such register: *Provided, however,* That nothing herein contained shall be construed as granting any right to enter upon the surface of such parcels of land for purposes of exploring for or the extraction of such minerals, or in any other manner to interfere with the public uses named in such maps, plats and additions."

K.S.A. 13-443. . . .

"When any street, avenue, alley or lane is vacated it shall revert to the owners of land thereto adjoining on each side, in proportion to the frontage of such land, except in cases where such street, avenue, alley or lane may have been taken for public use in different proportion, in which case it shall revert to the adjoining land in the same proportion as it was taken from it: *Provided,* That when in the opinion of the governing body it is necessary to reopen such street, avenue, alley or lane, it shall be reopened without expense to the city. . . ."

(See also K.S.A. 14-423 for a similar provision relating to cities of the second class; K.S.A. 15-427 as to cities of the third class; and K.S.A. 12-506 as to vacation of streets by the board of county commissioners. It is noted that the latter two statutes do not contain the proviso as to reopening of vacated streets without expense.) It must be kept in mind that the streets in this case were vacated after the McMurrays had conveyed their interest in the lots and at a time when plaintiff was the undisputed owner of the lots. Thus, if the McMurray reservation is ineffective, it is clear that a portion of the vacated streets would "revert to the owners of land thereto adjoining on each side," in this instance the plaintiff, under the provisions of K.S.A. 13-443.

The entire tract involved in this case was part of a development platted in 1925. The trial court found that the streets in question were dedicated as a part of this plat pursuant to K.S.A. 12-406, *supra*. What interests then existed in the county and the adjoining landowners following this dedication?

At common law the dedication of a street or highway for public use does not operate to divest the owner of the adjoining land from which the roadway was taken of the fee title. The public

acquires only an easement. (23 Am. Jur. 2d, Dedication Sec. 57, p. 50; 26 C.J.S., Dedication Sec. 50, p. 522.) Upon vacation of the street or highway, the burden of the easement is lifted and the full enjoyment of the fee is restored to the owner. Ownership of a tract adjoining a street or highway is presumed to extend to the center of the roadway and such ownership passes with the conveyance of the adjoining tract, absent a clear intent to the contrary. These common law rules were recognized and applied in *Bowers v. Atchison, T. & S. F. Rly. Co.*, 119 Kan. 202, 237 Pac. 913.

*Bowers* noted the existence of statutory law vesting the fee title in city streets in the county and that such modified the common law, but as such streets were not there involved the modified rules were not applied (119 Kan. at 205). Plaintiff argues and the district court agreed that the Missouri case of *Neil v. Independent Realty Co.*, 317 Mo. 1235, 298 S.W. 363 (1927), was applicable. It is argued that the Kansas statute on dedication (K.S.A. 12-406, *supra*) was "borrowed" from Missouri and that "when one state adopts a law from another, the judicial construction given to the statute in the state where it originated, follows it to the state of its adoption," citing *Comm'rs of Wyandotte Co. v. Presbyterian Church*, 30 Kan. 620, 636, 1 Pac. 109. The *Neil* case interpreting the Missouri statute is then presented as authority that the county does not receive a fee simple title but only an easement which is really no stronger than what was received at common law. Thus, upon vacation of the street the county's easement is removed and the title reverts in full to the original owner or his assigns.

There are two reasons why *Neil* is not applicable to the present situation. The first is that it was decided in 1927, after Kansas "borrowed" the statute from Missouri (1868, see G.S. 1868, ch. 78 sec. 6). In this regard, it was said in *State, ex rel.,v. Schutts*, 217 Kan. 175, 535 P. 2d 982, Syl. 1, that:

"A statute adopted from another state carries with it the construction placed upon it by the courts of that state, but an exception to the rule is that the construction of a statute by the highest court of the original state after it is adopted by another has no controlling effect on the adopting state."

The second reason is that the Kansas court has consistently held to the contrary. We are not aware of any decision of our court to the effect that a dedication for public use under K.S.A. 12-406, *supra*, creates only an easement on the property so dedicated, or that the statute does nothing more than restate the common law.

The distinction to be drawn between common law dedication on the one hand and statutory dedication on the other was recognized early in the law of this state as illustrated in two cases decided in 1873. In *Comm'rs of Shawnee County v. Beckwith*, 10 Kan. 603, a non-platted, non-city highway was held to be owned in fee by the adjoining landowners, but in *Atchison & N.R. Co. v. Garside*, 10 Kan. 552, the fee of a street dedicated under what is now K.S.A. 12-406 was said to vest "absolutely" in the county. It has long been established that the fee of a statutorily dedicated street vests in the county in trust, while control of the street rests in the city. (*Douglas County v. City of Lawrence*, 102 Kan. 656, 171 Pac. 610.)

The rule that upon dedication of a street for public use the fee title to the street passes completely from the dedicator is pervasive in the Kansas cases. In *Tousley v. Galena Min. & Smelting Co.*, 24 Kan. 328, the original dedicator of the city of Galena in filing the plat of the city reserved to itself all minerals under the dedicated streets and alleys. It then conveyed some of the platted lots to the defendant who began mining the minerals under the street adjoining the lots. The dedicator sought to enjoin this activity. It was there noted that the rule of the common law as to the effect of a conveyance of a lot bounded upon a highway remains in force in Kansas except as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people; and that the only modification is in the statute concerning dedications which says that the dedicator has parted with the fee in the street and has nothing but the lot to convey. We again take note of the decision in *Bowers v. Atchison, T. & S.F. Rly. Co.*, supra, on which the trial court relied, to observe that the issue there involved dealt with a public easement established under the common law rule and not to a dedication under the statute.

The opinion in *Wood v. National Water Works Co.*, 33 Kan. 590, 7 Pac. 233, dealt with a situation where the dedicators attempted to reserve unto themselves all rights under the public streets allowing only the simple easement or right of travel over those streets. It was there held that the fee of the streets and alleys dedicated to public use vests absolutely in the county and the county forever afterward holds the property in trust for such use; and that the reservation contained in the deed of dedication was

inoperative and void as against the public as not being in accordance with the terms of the statute. (See also *City of Russell v. Russell County B. & L. Assn.*, 154 Kan. 154, 118 P. 2d 121, wherein it was stated that the effect of the filing of the plat was to vest in the county the title and in the city the control of the street; and in which the court made reference to the well-settled rule that an attempted reservation by the dedicator of private rights in the street is void and the dedication stands unimpaired by the attempted reservation. [pp. 159-160.])

In *Gadarl v. City of Humboldt*, 87 Kan. 41, 123 Pac. 764, the owner of a lot adjoining a street, who had built improvements on the unopened street, attempted to enjoin the opening of the street by the city. It was said that he could not prevail, and further stated:

"The filing and recording of the plat operated to convey the fee of the street to the county for the public purpose for which it was intended. . . . The fee passes from the owner beyond power of resumption and vests absolutely in the county, forever, in trust for public use." (87 Kan. at 42.)

(See also *City of Hutchinson v. Danley*, 88 Kan. 437, 129 Pac. 163; *Devine v. City of Seward*, 174 Kan. 734, 258 P. 2d 302.)

In *Luttgen v. Ergenbright*, 161 Kan. 183, 166 P. 2d 712, it was said:

"Where lands are platted into lots and blocks, and streets and alleys are dedicated to public use, the fee to the streets and alleys is in the county . . . and a purchaser of a particular lot obtains no interest in the street in front or the alley in the rear of his lot. . . ." (161 Kan. at 190.)

In *Bradford v. Smith*, 177 Kan. 120, 276 P.2d 366, the question was whether the boundary of a platted lot began at the side or in the center of the street. The court held that the side of the street was correct, quoting from the *Luttgen* case as to a purchaser acquiring no interest in the street and adding that "such is a clear provision that the streets and their boundaries were one thing and the lots another." (177 Kan. at 123.)

Finally, in *City of Council Grove v. Ossmann*, 219 Kan. 120, 546 P. 2d 1399, it was said:

". . . The fee title to all property intended for public use vests in the county in trust for the public by virtue of K.S.A. 12-406. The authority to control, use and improve the streets is vested in the city. *State, ex rel., v. City of Garnett*, 177 Kan. 709, 281 P. 2d 1085; *City of Emporia v. Humphrey*, 132 Kan. 682, 297 Pac. 712. The dedicators no longer have title to property dedicated for public use once a plat

has been approved, filed and recorded. 23 Am. Jur. 2d 55, Dedication, Sec. 64. The fee title vests in the county forever. *Douglas County v. City of Lawrence,* 102 Kan. 656, 171 Pac. 610." (219 Kan. at 127.)

It is clear that the statute means exactly what it says: The fee of the dedicated streets vests in the county. Accordingly, when in 1925 the property here involved was platted into lots and the streets shown thereon dedicated to public use and such plat was duly filed and recorded pursuant to the statute, the dedicators and their successors in title had nothing but the lots to convey. The common law has thus been modified by the statute, and if the adjoining lot owner has no interest in the fee of the street, there can be no "reversion" in a technical sense when that street is later vacated.

What then is the meaning of "reversion" as used in K.S.A. 13-443 and similar statutes as above set forth; and if an adjoining owner does not have an interest in the fee of the street, does he have any other interest? The nature of "reversion" under what is now K.S.A. 13-443 was first considered in *A.T. & S.F. Rld. Co. v. Patch,* 28 Kan. 470. The court, in an opinion by Justice Brewer, first set out the statute which contained, as now, both the statement that upon vacation the streets "revert" to adjoining lots and the proviso that the city may reopen the vacated streets at any time without expense. It was there stated:

". . . [I]t would seem from the proviso to the section we have quoted that there was no absolute cession of the property to such adjacent lot-owner, but only a provisional and temporary giving-up of the public use; for the lot-owner takes it subject to the right of the city to reopen it without expense. In other words, the city permits the lot-owner provisionally and temporarily to hold and occupy the portion of the vacated street in front of his lot. Under those circumstances, we think it fair to consider that it becomes, as it were, a part of the lot—something in the nature of an accretion to it; and, if so, then any conveyance of the lot takes with it this attached portion of the vacated street." (28 Kan. at 473.)

(The provision allowing the city to reopen a vacated street or alley was given effect in *Myers v. Strauss,* 171 Kan. 91, 229 P. 2d 774.) The *Patch* case involved the situation where a street was vacated followed by condemnation of adjoining lots. Ownership of the vacated street was then contested by the owner of the lots. In such situation, it has been uniformly held that when vacated the street "reverts" or "attaches" within the meaning of *Patch* to the adjacent property and passes with that property when it is subsequently conveyed or condemned. See *Challiss v. Depot and Rld.*

*Co.*, 45 Kan. 398, 25 Pac. 894; *Haseltine v. Nuss*, 97 Kan. 228, 155 Pac. 55; *Rowe v. Bowen*, 113 Kan. 641, 215 Pac. 1022; *Rothwell v. Veail*, 129 Kan. 679, 284 Pac. 359. None of these cases deal with the situation where the owner of property to which a vacated street has already attached reserves the street area from a subsequent conveyance, although such presumably would be possible because the then possessory interest in the street would have reverted to the owners of (or attached to) land thereto adjoining on each side. It must be borne in mind that in the present case the streets had not been vacated so as to "attach" to the lots when the McMurrays made their reservation. In *Rowe v. Bowen*, supra, the owner of lots assumed she was reserving the adjacent portion of a street which had previously been vacated but there was no such indication in the conveyance. The court applied the general rule that the vacated street area shall revert to the owners of the lots adjoining on each side in proportion to the frontage and becomes an appurtenance and a part of such adjoining lot which passes under a conveyance by the mere description of the lot as originally platted.

*Challiss v. Depot and Rld. Co.*, supra, also discusses the nature of "reversion" under the statute in that:

". . . The fee of the street was never in him, and hence, in a strict sense of the term, there was no reversion. The fee of the streets is in the county for the use of the public, and the control of the same has been placed by the legislature in the city. Aside from the accommodation of the general public, the streets afford access and frontage to the property which abuts thereon; and these rights are incidental and appurtenant to such property, and pass by any conveyance or by condemnation of the same. . . . Through the appropriation of the lot, the company acquired the incidental and appurtenant rights in the street, and upon the legal vacation of the street, that portion situated in front of lot 1 temporarily became, as it were, a part of the lot, and passed to the company. . . ." (45 Kan. at 403.)

In *Rothwell v. Veail*, supra, Justice Burch summarized as follows:

"Because of the provision for reopening without expense, the court held the reverter was not an absolute cession; but the court held the portion of the vacated street in front of a lot becomes in the nature of an accretion to it, and any conveyance of the lot takes with it the attached portion of the vacated street.

. . .

"In seeking for a word to describe extension of the lot owners' interest to include the vacated street, the court in the Challiss case used the term 'appurtenant.' . . .

"In the case of *Haseltine v. Nuss*, 97 Kan. 228, 155 Pac. 55, it was explained that extension of a lot owner's interest to include a vacated street is not an accretion in

any riparian sense, and plaintiffs say, properly enough, the fee of the county in the street before vacation could not become appurtenant to the fee of the lot owners, because land owned in fee simple cannot be appurtenant to land owned in fee simple. This, however, is merely to play with words. Whatever the correct expression may be, the Patch decision established the principle that when a street is vacated the interest of an abutting lot owner is extended to include the vacated street in front of his lot, and will pass by conveyance of the lot." (129 Kan. at 681-682.)

Thus, cases dealing with the "reversion" statute (and reversion is not a good word—see *Rothwell v. Veail*, supra, p. 682) do not alter the conclusion that before vacation of the street an adjoining lot owner has no interest in the fee of the street. In fact after vacation there is no technical reversion but only a "temporary attachment" of the possessory interest. Under the statutes, the fee vests in the county forever but the control is in the city. It is the city which by ordinance vacates the street, thus giving up its right of control (the possessory interest) which in turn "attaches" to the adjoining lot. However, the city may reassert its right of control at any time and dispossess an adjoining landowner who may have appropriated a portion of the vacated street.

Prior to vacation, a lot owner is not completely disinterested in a statutorily dedicated street adjoining his land. As *Challiss* points out, he has appurtenant rights of access and frontage. (After vacation, the possessory interest of the street also becomes an "appurtenant" right.) Also, since the county holds its fee interest in trust, an adjacent property owner has some interest in that trust. In *Comm'rs of Franklin Co. v. Lathrop*, 9 Kan. 453, a tract of land had been statutorily dedicated as a "court-house square." The county sought to sell a part of the tract and use the funds to erect the desired courthouse. Adjoining lot owners brought an action to restrain the sale and the court held that when an adjoining owner had purchased his lot after the dedication and made improvements, and when a change from public to private use would lessen the value of the adjoining lot, such adjoining owner had a vested right in a trust thereby created and could enforce the public purpose for which the county held its title so as to restrain the sale. Be this as it may, it would seem that neither such an interest, nor the appurtenant right of access and frontage can be construed to cover possessory rights in the street itself prior to vacation.

In this case, the McMurrays owned lots in a city subdivision

which adjoined streets which had been dedicated to public use under the provisions of K.S.A. 12-406 and attempted to reserve "all right, title and interest of the grantors in and to the right-of-way of [the streets] as platted, if any." The expressed intention of the McMurrays was to "reserve to the grantors any present title and interest in, or rights of reversion to any property not within the boundaries of said lots." Clearly, the McMurrays had no "present title and interest in" the streets in question, and lacking such there was nothing for them to reserve. They had only their platted lots to convey and when those streets were vacated the possessory interest therein passed to the owners of land adjoining on each side, subject to being repossessed and the streets reopened without expense to the city, when in the opinion of the governing body it is necessary to do so, all as provided by K.S.A. 13-443, *supra.*

We hold that the trial court erred in concluding that the reservation contained in the deed from McMurrays to Johnstons was valid and effective; however, this does not require reversal unless it also appears that the trial court erred in its conclusion that the purported reservation was not a defect in title.

In *Murray v. Title Ins. & Trust Co.*, 250 Cal. App. 2d 248, 58 Cal. Rptr. 273 (1967), it was said:

". . . When a title company insures an owner's title to property, by implication it likewise insures the presumed ancillary titles and privileges attached to the property and assumes liability for defects in those titles and privileges. In the present case, for example, if plaintiffs were entitled to presume ownership in fee to the center of the streets adjoining their lot, they were likewise entitled to presume title insurance coverage against defects in title coextensive with their presumed ownership." (250 Cal. App. 2d at 252.)

By statute, California holds that the fee of statutorily dedicated streets is in the owners of adjoining lots. If the Kansas rule were the same, as was found by the district court, the rule as to coverage announced in *Murray* would seem to be correct and the trial court would have erred in holding that the reservation was not a defect. However, we have concluded that in Kansas the owners of property adjacent to streets dedicated to public use under the provisions of K.S.A. 12-406, *supra,* have no presumption of ownership in those streets. Thus, the situation is similar to the situation described in *Murray* where a California buyer acquired a lot adjacent to an abandoned street:

". . . On the other hand, when the record shows that the insured property is adjacent to an abandoned street, we do not think a policy of title insurance to a specific lot insures title by implication to the adjoining strip created by the abandonment of the street. Under these circumstances a grantee has no right to expect that ownership of a lot will presumptively comprehend ownership in an abandoned street. . . . Coverage of title insurance extends to reasonably anticipated implications of ownership which attach to the insured property by reason of the record, but does not extend beyond that point." (250 Cal. App. 2d at 256-257.)

Lacking any presumption of ownership in the adjacent streets, it cannot be said that title insurance coverage extends to any portion of those streets prior to vacation.

Plaintiff directs attention to *Williams v. Bricker*, 83 Kan. 53, 109 Pac. 998, where it is said:

"A title need not in fact be bad in order to make it unmarketable or non-merchantable. . . . If there be doubt or uncertainty sufficient to form the basis of litigation, the title is unmarketable." (Syl. 1.)

" '. . . A marketable title in equity is one in which there is no doubt involved, either as to matter of law or fact.' " (83 Kan. at 55.)

We have no argument with that authority. However, it is to be noted that marketable title is not insured under the policy in question here. What was insured was the nature of title: fee simple, free of defects. By determining that the reservation was ineffective and of no regard at the time plaintiff acquired the policy from defendant, it is also determined that no defect in plaintiff's title to the lots existed. The fact that the purported reservation might render the title unmarketable prior to judicial determination that it is ineffective is of no concern here because such was not part of the coverage.

In *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P. 2d 254, it was said:

"Where a title insurer presents *a buyer* with both a preliminary title report and a policy of title insurance two distinct responsibilities are assumed; in rendering the first service, the insurer serves as an abstractor of title and must list all matters of public record regarding the subject property in its preliminary report. When a title insurer breaches its duty to abstract title accurately it may be liable in tort for all the damages proximately caused by such breach. . . . " (220 Kan. at 258.)

The present case was not brought in tort for errors in abstracting, but on the policy. Accordingly, it need not be determined whether the purported reservation, even though not effective and thus not a defect, should have been disclosed in the policy issued by the defendant.

We hold that the district court correctly concluded that the purported reservation by the McMurrays was not a defect affecting the title to the real estate described in the title insurance policy and, accordingly, not within the coverage of that policy. The correct result having been reached by the trial court, reversible error is not shown. (*Highland Lumber Co. v. Knudson*, 219 Kan. 366, 548 P. 2d 719, Syl. 6.)

Having so determined, there is no issue before us with respect to plaintiff's damages or attorneys' fees.

Affirmed.